GREEN J. BLAKE *et al.,* plaintiffs in error, *vs.* THE MAYOR AND COUNCIL OF THE CITY OF MACON *et al.,* defendants in error.

1. An act of the legislature authorizing a municipal corporation to subscribe for stock in railroads and to issue bonds to pay for the same, does not authorize it to contribute to a railroad by indorsing its bonds, and upon the complaint of a tax-payer or citizen of the corporation, a court of equity will enjoin such indorsement.
2. Neither the act of 1871, amending the charter of the city of Macon, nor the act of 1874, regulating the *manner in which* municipal corporations shall issue bonds, authorizes the issue of any bonds which said city or said corporations have not a special legislative authority to issue, independently of such acts.
3. The indorsement of the bonds of a street railroad in a city by the city authorities, is not within the ordinary administrative powers of the corporation, and requires a special legislative grant.

Municipal corporations. Railroads. Bonds. Indorsement. Before Judge HILL. Bibb county. At Chambers. October 10th, 1874.

Green J. Blake and others, residents and tax-payers of the city of Macon, filed their bill against the mayor and council of the city of Macon and the Macon Street Railroad Company, alleging that under an act of the general assembly, the said street railroad company proceeded to construct its road and has been running it for two years or more; that said company is a private corporation and in no way connected with the mayor and council of the city of Macon; that said city derives no pecuniary benefit from said street railroad, and are not stockholders in said company; that said company is greatly embarrassed, if not insolvent; that said company proposes to extend the lines of its road to other parts of the city, and to enable it to do so, and to meet its present indebtedness, it asks said city to indorse its bonds to the amount of $20,000 00, and proposes to indemnify said city by mortgaging to it the entire property belonging to said street railroad; that said city agreed to said proposition, and ordered an election of its citizens, who ratified it by a two-thirds vote; that the indemnity offered will fall greatly short of the liability assumed, and the property of the citizens would be subject to taxation to meet the deficiency; that said indorsement is beyond the power of said mayor and council under the constitution and laws of this state; that no provision is made in any of the acts of the general assembly authorizing them to indorse said bonds, and that, by the 16th and 17th sections of an act of the general assembly of this state, approved 11th December, 1871, to grant additional powers to the mayor and council of the city of Macon, they are prohibited from indorsing said bonds, and by article 3, section 6, and paragraph 4, of the constitution of this state, it is not competent for the general assembly to permit the said mayor and council to indorse said bonds even with the vote of the citizens. Pray that the writ of injunction may issue.

The Macon Street Railroad Company answered substantially as follows:

Denies the right of complainants to the injunction prayed; denies that the defendant is wholly a private corporation, but

public to the same extent as are other incorporated railroad companies ; says that the indebtedness of said defendant does not exceed $10,500 00 ; that its property is worth $15,000 00 ; that the tracks and additional tracks and all the property are to be mortgaged to the city ; that it will be full indemnity. Denies the charge that said road is insolvent, and that the indorsement will be for the benefit of the road only, and that the same will involve the city in loss and impose burdens on the tax-payers. Says that said city, through the mayor and council, solicited that the track running from the intersection of Third and Mulberry streets to the central city park, (about half a mile) should be constructed, and said city paid $5,000 00 for that purpose ; that this park is known as the fair grounds on which the city has spent $150,000 00 ; that it is of vital consequence to keep this street railroad in successful operation to and from said park, and it enhances the value of said grounds; that the road brings the city commons and other property into easy access, and adds to the public convenience of a large portion of the citizens and tax-payers; that the said mayor and council did, in accordance with the provisions of the charter and ordinances of said city and the constitution and laws of the state, agree to indorse said bonds to the amount of $20,000 00, and submitted it to a vote of the citizens and tax-payers, as required by the charter, and that action was duly ratified.

The inujunction was refused and the complainants excepted.

POE, HALL & LOFTON, for plaintiffs in error.

1st. It is a matter of indifference, for the purposes of this case, whether the Macon Street Railroad Company be a public or private corporation, since the construction of the powers of both kinds of corporations is the same; but if it be material, then it is unquestionably, under our Code, a private corporation: See Charter, Acts 1868, page 107; Code, sections 1671, 1672, 1673.

2d. The question in this case is, whether the mayor and city council of Macon can, under their charter, become the guar-

Blake *et al.* *vs.* The Mayor and Council of the City of Macon *et al.*

antor, accommodation indorser, or security, for undertakings of another corporation, Under sections 16 and 17 of amended charter of 1871, the mayor and council have power to issue bonds for specified purposes, and to "subscribe" for railroad stock, upon the ratification of their act by two-thirds of the citizens voting at an election held for the purpose: Acts 1871, page 121. Municipal corporations, like private corporations, must act within the powers expressly given, or such implied powers as are necessary to accomplish the object of their creation: 1 Dillon on Municipal Corporations, sections 29, 31, 55 and notes; Charles River Bridge *vs.* Warren Bridge, 11 Peters, 536; Mayor and Council of Savannah *vs.* Hartridge, 8 Ga., 23; Bethune *vs.* Hughes, 28 *Ibid.*, 564. The power to issue bonds or subscribe for stock does not include the power to make accommodation indorsements, or to enter into engagements of guaranty or suretyship, even for another corporation invested with powers for the accomplishment of the same or similar objects: 1 Dillon Municipal Corporations, section 393; 1 Parsons, N. & B., 166; Bank of Genesee *vs.* Patchin Bank, 3 Kern., 314; Louisiana State Bank *vs.* Orleans Navigation Company, 3 Louisiana R., 294; Clarke *vs.* DesMoines, 19 Iowa R., 199 and 204; Chamberlain *vs.* Burlington, *Ibid.*, 395; Smead *vs.* Railroad Company, 11 Indiana R., 105; Payne *vs.* Brecan, 3 Hurlston & Nor., 572; Bateman *vs.* Mid. Wales Railway Company, Law R., 1 C., page 510; 1 Dillon Municipal Corporations, section 81. In several cases the supreme court of the United States have held that the power to borrow money implies the power to issue securities for the repayment of the loan: Meyer *vs.* Muscatine, 1 Wallace, 384; Rogers *vs.* Burlington, 3 *Ibid.*, 654. These decisions, and others following them, have been modified and limited in extent by a later ruling of that court: City of Nashville *vs.* Ray, determined at October term, 1873, and reported in Law Times and Reports, June, 1874, page 348.

3d. Upon the principles we have been discussing, it is not competent for the general assembly of this state to grant permission to a municipal corporation to extend such accommo-

dation as is here asked: Paragraph 4, section 6, article 3, constitution. Code, section 4067, defines and limits the power of the legislature in this respect. It may permit a coporate town or city to "take stock" or "make contribution" to, or "engage in" constructing "railroads or works of public improvement," "after a majority of the voters of such town or city, voting at an election held for the purpose, shall have voted in favor of the same, *but not otherwise.*" It is clear from paragraph 6, same article, and Code, section 5068, that the framers of the constitution did not intend to include the power to guaranty, indorse or become security, in the terms "take stock," "*make contribution,*" or "engage in." By this section the state cannot become "*a stockholder*" in any corporate company; but its credit may "*be granted*" "*or loaned*" "*to aid*" such company, upon certain specified conditions: Thorne *vs.* Cramer, 15 Barb., 118.

LANIER & ANDERSON; HILL & HARRIS, for defendants, cited Dillon on Municipal Corporations, sections 85, *et seq.,* 105, (*a.*) 417, *et seq.,* 41, 42, 60; City Charter, section 42.

MCCAY, Judge.

1. The broadest power to the corporation bearing upon the authority to make the indorsement sought to be enjoined, is the amended charter, act of 1871, page 121. That act authorizes the city to "subscribe to stock in railroads," if it does so at all, by implication only, and perhaps the true construction of it would be that even if there were to be a special grant to subscribe to such stock it could only be done by a vote of the people as there prescribed. But admitting that this act, by implication, confers the power, it by no means follows that under a power to "subscribe stock," is included the power to indorse the bonds of the company. The one power implies a consideration, the city gets the stock; the other is gratuitous, is in its very nature *ultra vires*, since it is entering into a contract of suretyship: 1 Dillon on M. Cor., section 393; 3 Kernan, (N. Y.,) 314; 3 Louisiana R., 294. Even partners can-

Blake *et al. vs.* The Mayor and Council of the City of Macon *et al.*

not do this without special agreement: Code, section 1914. Such powers to a municipal corporation especially ought to be construed strictly, as they involve the right of taxation upon the people, since, if the power to contract the obligation exists, the right to tax to pay the debt would seem to follow as a necessary corollary. It is useless to cite authorities at this day to establish the proposition that these bodies have no powers except those granted, and that the ·grants are to be strictly construed.

2. Nor does the general act of 1874, help the matter. Our construction of that act is, that it confers *no power* to issue bonds at all; that it only regulates the manner in which bonds shall be issued, in cases where the power to issue has been, or may be, granted by the legislature. And this idea is, we think, not only plain from the general language of the law, but it is distincely indicated by the last section, which excludes bonds issued under acts passed by the (then) present legislature from the operation of the act. It would be a very large assumption, we think, to suppose that it was the intent of the legislature to authorize any municipal corporation to issue bonds at its pleasure, provided two-thirds of the people agree to it, and we do not give the act such a construction.

3. The objects of a municipal corporation, are, in the main, the preservation of order, and the doing of such acts for the public good as cannot well be done by private enterprise. But here is a private enterprise, and it is insisted that it is within the scope of municipal power, not to build a street road, but to aid, by a donation of the credit of the city a private coporation, to build it, and to take the profits of it. We do not think this is within the ordinary scope of municipal authority, nor can any authorities, as we believe, be found carrying the objects of a corporation that far. We are clear that the proposed indorsement is *ultra vires,* and that the injunction should have been granted.

Judgment reversed.