CARTLEDGE *et al. v.* CITY COUNCIL OF AUGUSTA *et al.*

No 11387. November 18, 1936.

Russell, C. J., and Atkinson and Hutcheson, JJ., being disqualified, Judges Dickerson, Graham, and Knox were designated for this case.

*Hamilton Phinizy* and *F. Frederick Kennedy,* for plaintiffs.

*Lee, Congdon & Fulcher, W. Inman Curry, Hull, Barrett & Willingham,* and *Colquitt, MacDougald, Troutman & Arkwright,* for defendants.

Dickerson, Judge. By act of the General Assembly (Georgia Laws 1931, p. 673), the charter of the City of Augusta was so amended as to "provide for and create the Augusta Canal Commission" with authority and jurisdiction over the existing Augusta municipal canal; to "provide for the adoption by said commission of a comprehensive plan for the electrification of the water-power in the Augusta municipal canal for the effectual use of said water-power, by means of hydroelectric and stand-by plants, to generate, to transmit and to distribute electric power and current; to provide by contract or otherwise for the construction, purchase, or other acquisition of the hydroelectric and stand-by plants, and necessary transmission lines and distribution system, and to maintain and operate the same; to authorize said commission, the Mayor and City Council of Augusta to make and enter into needful and appropriate contracts and/or issue revenue bonds or certificates for the purpose of accomplishing the said objects; to provide for the creation and maintenance of a sinking-fund for the payment of said bonds or certificates, and for the management of said fund; to provide security for said bonds or certificates, and for the registration and sale of same; to repeal laws in conflict herewith; and for other purposes."

Section 2 of the said act of the legislature provides for the creation and organization of the Augusta Canal Commission. Section 3 gives that commission "jurisdiction and control over and

complete management of the Augusta canal, in so far as same is necessary and convenient for the accomplishment of the objects and purposes of this act, which is the property and possession of the City of Augusta," and provides that the commission shall determine upon and adopt a comprehensive plan for the utilization of said canal, and further provides that the commission shall have authority to utilize said canal, and the water-power therein, to develop electric energy and current, and to that end it is authorized and empowered to build, construct, contract for, or otherwise acquire, maintain, and operate a hydroelectric plant, a stand-by plant, a transmission or distribution system, and to acquire such other properties as shall be necessary and desirable in connection with the plant or plants and systems, and in connection with and as a part of the electrification plan and system adopted by the Canal Commission, and approved by the Mayor and City Council of Augusta, title to all of said properties to become vested in the City Council of Augusta whenever the contract under which the city is to acquire same shall have been fully performed and carried out. Section 4 provides that the "City Council of Augusta may by ordinance, but only on request of the Augusta Canal Commission hereinbefore created, authorize and issue bonds of said city, payable solely out of the special fund hereinafter provided for, for the purpose of accomplishing any or all of the objects and powers of said commission as herein set forth." It is expressly provided in this section that "such bonds shall not in any wise or sense be or be regarded as general indebtedness of said city, nor shall the city be required to levy taxes or pledge its general municipal revenues to the payment of said bonds, and/or any interest thereon." Said section contains further provisions as to the denomination, interest rate, redemption, contents, and manner of sale of said bonds, and contains other provisions.

Section 5 provides that "the rates and charges required to be paid for the electric power and current shall be efficiently prescribed by the Canal Commission, and shall be reasonable and equitable, so as to produce sufficient revenues to pay, and said commission shall therefrom cause to be paid," (a) operating and maintenance expenses of the plant or plants, and distribution system, (b) judgments and claims for injury to persons or property, and the cost of any insurance covering same, (c) the interest upon

bonds or other obligations payable solely out of the revenues of the plants and system, (d) "the amount required to be paid annually into the sinking-fund, herein provided for, for the payment of bonds and other obligations payable solely out of the revenues of said plants and system, required under the contracts made with the holders of said bonds or other obligations." It is further provided in section 5 as follows: "No other charge shall be made upon the revenues of said plants and system so long as any bonds issued under the provision of this act shall remain outstanding and unpaid as to principal or interest; provided, the commission may budget and pay, out of revenues in' excess of those embraced in subparagraphs a, b, c, and d, of this section, the cost of improvements, replacements, and betterments, or use said excess revenue to call, pay off, and retire subsequently maturing bonds outstanding and issued hereunder." Section 6 provides that "at or before the issuance of any bonds hereunder, a sinking-fund shall be created by said commission, into which shall be payable from the revenues of said plants and system, from month to month as said revenues are collected, all sums in excess of the cost of maintenance and operation of the plants and system, as defined in section 5 hereof, and the amount of judgments and approved claims for injury to persons or property or cost of insurance covering same, as defined in section 5 hereof. The monies in said sinking-fund shall be used and applied solely in payment of matured interest on bonds authorized under the provision of this act, and for the retirement of said bonds at or prior to maturity, in the manner herein provided. All sums in said sinking-fund, in excess of the amount required for the payment of interest on outstanding bonds for the current year, shall be paid out, upon the orders of the commission, for the purchase of bonds for the account of which such sinking-fund has been accumulated, and otherwise shall be used to pay the principal or interest on said bonds as the same become due; provided, in the event such bonds contain an option permitting retirement prior to maturity, then such excess sums shall be paid out as aforesaid for the purchase of such bonds at a price not exceeding the then next succeeding retireable price; and if the commission shall be unable to so purchase sufficient bonds of said issue to absorb all such surplus, at the first opportunity it shall call for redemption a sufficient amount of said bonds, so far

as practicable, to absorb the entire surplus remaining in said sinking-fund over the amount required for the payment of interest during the current year. . . Into said sinking-fund, also the City Council of Augusta, by its mayor and/or other proper officers, may transfer or put any monies or funds which it may have on hand and which have not been already appropriated or allocated to or for other purposes prior thereto, and against which such transfer or use of said monies or funds there is not, at the time, any legal prohibition." Section 7 of the act gives the commission full control and management of the canal in so far as same is necessary and convenient for the accomplishment of the purposes of the act; requires the commission to furnish and supply such electric current as may be needed or required by and for the several departments of the City of Augusta for the purpose of lighting the streets, parks, and public buildings and places, and for all other municipal needs; and provides that the city "shall use said current and power and pay therefor in accordance with the rates, rules, and regulations adopted by said Augusta Canal Commission" and approved by the city council. Said section also authorizes the commission to sell electricity to individuals, persons or corporations in Augusta and Richmond County, and to charge therefor reasonable and equitable rates, "providing further that said rates shall be maintained on such basis as will produce sufficient revenues and net earnings to pay the interest on and to amortize the principal of bonds that may be issued under the provision of this act." Section 8 provides for reports by the commission to the City Council of Augusta. Section 9 provides that no election, or anything not required by the terms of the act, shall be necessary for the validity of the bonds. Section 10 provides for a liberal construction of the act, and that "nothing in this act shall be construed as authorizing either the city council or said canal commission to make any contracts that will provide for or require the payment of any funds raised or produced other than in accordance with the provisions of this act." The remaining sections of the act contain a clause repealing conflicting laws, provide when the act shall become effective, and provide that until a plan of development is submitted by said canal commission, and approved by the city council, the city council would have the right to lease or develop the canal.

The evidence shows that the Augusta Canal Commission, after functioning under the foregoing act of the General Assembly for several years, on November 20, 1935, submitted to the Mayor and City Council of Augusta, for its approval, a comprehensive plan for the hydroelectric development of the Augusta Canal, and submitted therewith a proposed co-operative contract to be entered into between the Augusta Canal Commission, the City Council of Augusta, and the Georgia Power Company. On December 3, 1935, the City Council of Augusta, by ordinance, approved the comprehensive plan submitted by the Augusta Canal Commission. On December 9, 1935, the Augusta Canal Commission, the City Council of Augusta, and the Georgia Power Company executed a contract providing for the co-operative development for the utilization of the Augusta Canal. The main provisions of this contract are as follows: In the first portion of the contract reference is made to the act of the General Assembly of Georgia (Ga. Laws 1931, p. 673), and it is stated that the commission has been unable to secure the necessary funds to carry out the purposes of the act of 1931 on any basis other than the one set out in the contract, that "said commission, with the approval of the City Council of Augusta, has received a grant dated October 9, 1935, from the Federal Emergency Administration of Public Works, in the sum of approximately one hundred ninety-three thousand ($193,000.00) dollars to aid in financing the construction of a four-thousand (4000) kilowatt hydroelectric plant, and a thirteen-thousand volt transmission line, together with necessary substations," and that as a condition of the grant "the commission shall furnish evidence to the Administrator of Public Works that it has made satisfactory arrangements for financing the cost of the project of the Augusta Canal Commission, which is not included in said grant." Article 1 of the contract provides when the contract shall become effective. Article 2 provides that the contract shall extend for a period of twenty years, unless sooner terminated under provisions of article 19, or unless the contract is changed as provided in article 14. Article 3 provides for the construction by the Augusta Canal Commission of a hydroelectric plant at Rae's Creek between the Augusta Canal and the Savannah River, having a four-thousand (4000) kilowatt capacity, and designed to permit the installation of a second generating unit of equal capacity.

This article also provides that the company will secure certain rights of way and construct thereon distribution lines. Article 4 gives the commission the right to acquire certain water rights in the canal of the Augusta Factory Inc., for a consideration not to exceed eighty-five thousand ($85,000) dollars, which may be included as part of the construction cost; and contains other provisions. Article 5 provides for an interchange of power between the proposed plant of the Augusta Canal Commission and the lines of the Georgia Power Company. In article 6 the Augusta Canal Commission agrees to utilize the electrical energy which may be generated by the proposed hydroelectric plant, only for sale to industries already holding canal water-power contracts, or to parties thereafter operating the plants of such industries, for delivery to the Georgia Power Company in exchange for energy supplied by said company to the street-lighting and white-way system of the City of Augusta, and for use by the city in municipal water pumping, and for sale to any new industrial customer having a simultaneous connected load in excess of fifty (50) kilowatts which may locate in Richmond County, or in Augusta, up to an aggregate demand of eight thousand (8000) kilowatts, and for sale to the Georgia Power Company, as provided. In article 7 the company agrees to protect the commission's market, and not to sell to the industrial customers of the commission unless required by law to do so, in which case the company will treat the sales of electricity as made for the account of the commission. Article 8 relates to plant design, and contains other provisions. In article 9 the power company agrees to lease to the canal commission the company's present street-lighting and white-way system in the City of Augusta, and to light, operate, and maintain such system, and also the white-way system now owned by the city, for the sum of forty-four thousand ($44,000) dollars per year, and in consideration of the delivery to the company by the commission, without cost, of electric energy equivalent to that required for street purposes, plus twelve (12) per cent. of that estimated to cover line losses. Articles 10 and 11 contain agreements concerning continuity of service between the parties, excusable failure of performance by either party, etc. In article 12 of the contract it is stated: "Attached hereto and made a part hereof is a copy of the contract between the commission and the City Council of Augusta,

executed contemporaneously with the execution of this contract, and which is intended, together with the terms of this contract, to assure to the commission reasonable certainty of meeting its debt service and all of its other obligations." Article 13 provides that "The proposed development will be financed through the sale of revenue bonds, as authorized under the 1931 legislative act." It is further provided by said article that the bonds shall mature thirty years from the date of issue, but subject to call at any time prior thereto at the option of the commission. It is stated in said article that the total issue of bonds to be authorized will not exceed one million ($1,000,000) dollars. The Georgia Power Company obligated itself to purchase, at the par value thereof, up to the amount of six hundred and seventy-four thousand ($674,000) dollars of said bonds for construction costs in connection with the first unit of the proposed hydroelectric plant. Should a second unit be constructed, three hundred and thirty thousand ($330,000) dollars additional bonds were to be issued. Article 13 of the contract, as originally drawn, further provided for the appointment of a trustee for the bondholders on certain contingencies; but this provision was later stricken, and another provision for the appointment of a receiver was substituted, as will appear later in this statement. Article 13 further provided that "The ordinance or ordinances authorizing the issuance of the revenue bonds herein provided for shall contain covenants with the holders of such bonds, incorporating all of the terms and provisions of this contract therein, which terms and conditions are deemed necessary by the commission to assure the marketability of said bonds, and shall provide for the establishment and maintenance of a sinking-fund to retire said bonds, as may be determined by said commission in accordance with the provisions of the act of 1931." In article 14 of the contract it is stated: "For the considerations herein expressed, the company does hereby bargain, sell, and convey unto the City Council of Augusta, its successors and assigns, an option to require of the company the surrender and cancellation of all revenue bonds issued hereunder and then owned by the company as provided herein, and to convert this agreement into a contract for the sale of raw water-power to the company, and a lease to the company, its successors or assigns, of the hydroelectric plant and distribution system, all on the terms and conditions

stated in this article. Such option may be exercised by the City Council of Augusta by a written notice to that effect during any year within the life of this agreement and within a period of ninety (90) days from the date the oath of office is taken by the mayor and/or members of council, as required by city ordinances, and the city council is organized for that year. If this option is exercised, the plant will be turned over to the company as provided herein, free from all liens and encumbrances and subject to no contracts other than those bona fide made during the preceding period of operations." The further terms of the option granted in article 14 are that the Georgia Power Company, in addition to surrendering and cancelling bonds owned by it, will, in the event the option shall be exercised, "furnish funds necessary to pay and retire all bonds owned by others, without any obligation upon the city to repay to the company the funds so advanced; provided, however, that in the event the city subsequently elects to redeem or recapture the hydroelectric plant, nothing herein contained shall relieve the city of making payment according to the schedule" set out in said article. Provision is also made for canceling and surrendering the operating agreement between the Augusta Canal Commission and the City Council of Augusta, "all to the end that the City Council of Augusta, as it may be constituted in any future year, shall not be bound without its consent to pay principal or interest on outstanding revenue bonds, and/or to take and pay for electrical capacity and energy." It is further provided, in the event of the exercise of the option, that the Georgia Power Company will pay for the use of water to operate the hydroelectric plant, and for rental of the plant and system, thirty thousand ($30,000) dollars per year, as long as only the first generating unit is in operation, and fifty thousand ($50,000) dollars per year in the event the second generating unit is placed in operation, or sufficient water is made available to the company for that purpose. The city is obligated, in the event of the exercise of said option, to operate and maintain the canal in such condition as to deliver the available water to the plant at all times. It is further provided by article 14, that, in the event that the option given is exercised, the City Council of Augusta may terminate the lease and rental agreement provided in said article, and eliminate all the right, title, and interest of the Georgia Power Company in the plant and

system; but the lease may be terminated only after the expiration of twenty (20) years from the date the plant is placed in operation, or the termination of ten (10) years from the date the second unit is placed in operation if said second unit is constructed, or the termination of a period of ten years from the date of the exercise by the city of the lease option, whichever termination is the latest; and to terminate the said lease agreement at such time, the City Council of Augusta must pay to the Georgia Power Company an amount equal to the percentage of the principal amount (plus interest accrued and unpaid) of revenue bonds authorized and actually issued and outstanding at the date of the exercise of the option, according to a table set out in said article 14. The table shows that at the end of the tenth year after the commencement of the lease agreement, the city must pay $81,090 for each $100,-000 outstanding at the beginning of the lease, and the amount to be paid decreases each year until, at the end of the thirtieth year after the commencement of the lease, no amount must be paid. Provision is also made for the amounts of payments to be made by the city should a second unit be constructed. Article 16 of the contract provides for purchase by the Augusta Canal Commission from the Georgia Power Company of electric power and current for minor municipal needs. Article 17 requires the approval of the city as a condition to the effectiveness of the contract. Article 18 is as follows: "It is agreed that said bonds shall be strictly revenue bonds, with no obligation to pay the same from any other source than the revenues of said hydroelectric plant, distribution line, and appurtenances. The right is retained by the commission and by the city to pay said bonds in whole or in part from other sources, if they or either of them should desire to do so." Article 19 recited that the commission had reached the conclusion that it was unwise and unsound to attempt to serve domestic and/or commercial electrical customers other than to the extent set forth in the contract. Said article further provided that the entire contract might be terminated by the commission by its paying off in full all outstanding revenue bonds, and by returning to the Georgia Power Company any customer which the company had turned over to the commission by the terms of the contract. Article 20 provides exemption from personal liability upon the contract of members of the canal commission. Article 21 recites that

the City Council of Augusta joins in the contract as a party thereto, and acknowledges itself held and bound by the terms and provisions of the contract executed in its interest and behalf by the Augusta Canal Commission as an administrative agency or department of the City of Augusta.

The material provisions of the contract between the City Council of Augusta and the Augusta Canal Commission, referred to and made a part of the foregoing contract between the city council, the canal commission, and the Georgia Power Company, in article 12 thereof, are as follows: Paragraph 1 provides for transfer by the city to the commission of the land upon which the hydroelectric plant is to be constructed, and for a transfer of rights of way, easements, etc.; it being provided, however, that the title to all plants, systems, and other properties shall be or become vested in and be the property of the City Council of Augusta when the contracts or agreements under which they are to be acquired have been fully performed and carried out, "and all obligations connected therewith have been fully discharged and cancelled." Paragraph 2 provides that if the commission obtains from the Augusta Factory Inc. any real estate, the commission will transfer and convey the same to the city in fee simple. Paragraph 3 provides that the city shall grant to the commission the use of all water in the Augusta canal, necessary to operate the hydroelectric plant within prescribed limitations. Paragraph 4 provides that during the entire period of the contract the city shall operate and maintain the canal, in return for which the commission shall pay the city, as part of the operating and maintenance expenses of the plant, one half of the profits in excess of fifteen thousand ($15,-000) dollars in any year when the profit should exceed fifteen thousand ($15,000) dollars. Paragraph 5 defines the word "profit" as used in the contract. Paragraph 6 provides that during the entire period of the contract the commission will operate and maintain for the city the present street-lighting and white-way system, and for such service the city shall pay to the commission fifty-four thousand ($54,000) dollars per year, subject to certain adjustments. Paragraph 7 provides that in the event, in any year during the period of the contract, there is no profit from the operation of the commission's plant, the city will pay to the commission such additional sum for said street-lighting and

white-way system as will cause the commission to realize a profit of one thousand ($1000) dollars in each such year; provided that the city shall in no event pay more than sixty-three thousand, five hundred ($63,500) dollars in any year. Paragraph 8 provides that the contract between the council and commission shall continue in force until all revenue bonds are paid, or the trilateral contract terminated in pursuance of paragraphs 14 and 19 thereof.

After the execution of the foregoing contracts, the trilateral contract of December 9, 1935, set out above, was changed, and an amendment and supplement to the original contract was entered into by the three parties to the original contract. Paragraph 1 of the supplemental agreement eliminated all references to the construction of the second generating unit. Paragraph 2 of the supplemental agreement struck from article 13 of the original contract the paragraph providing for the appointment of a trustee in the event of a default in the payment of the bonds, and substituted in lieu the following paragraph: "If for any reason said bonds, or any of them, or any interest thereon, become in default, or if said bonds, or any of them, shall be declared invalid by any court of competent and final jurisdiction, and the payments of principal or interest thereon shall cease as a result thereof, then and in any such event, except as in case of the exercise of the option as hereinafter provided in article 14 hereof, a majority in amount of the then bondholders shall have the right to apply to any court of competent jurisdiction for the appointment of a receiver or trustee to take over the operation of said plant, distribution lines, and all accessories, and the right to use the water in said canal under the same conditions as they would have been operated or used by the commission. The court shall have the right in its discretion to appoint such receiver or trustee, and determine his necessary qualifications; and such receiver or trustee, when appointed, shall have all rights and powers formerly held by the commission. Such operation by a receiver or trustee so appointed shall continue, subject to the orders of the court making the appointment, and until the net profits of the plant are sufficient to make all payments theretofore due and such payments have been made, or until the defaulted payments are otherwise paid; and thereafter the commission shall again assume operation of the plant under the terms hereof." Paragraph 3 of the supplemental agreement amends

article 19 of the original contract by substituting a new article 19 substantially the same as the original, but reserving to the city the right to obtain electrical energy from outside sources, and to sell same in any way it may see fit, other than over the distribution system provided for in the contract. Paragraph 5 of the supplemental agreement adds, at the end of article 13 of the original agreement, a provision that no revenue bonds in excess of $700,000 of equal or superior dignity, as provided for in the contract, shall be issued without the consent of a certain percentage of the bondholders.

On January 13, 1935, the City Council of Augusta passed an ordinance authorizing and approving the foregoing supplemental agreement. On January 13, 1936, the City Council of Augusta enacted an ordinance providing for the issuance of $700,000 of revenue bonds, in accordance with the act of the General Assembly and the trilateral contract and amendment thereto, all of which have been set out above. In said ordinance is set out the resolution of the Augusta Canal Commission creating a sinking-fund for the payment of the revenue bonds, said resolution providing that the revenues of the plant be paid into said sinking-fund, and that "the money in said sinking-fund shall be used and applied solely in payment of matured interest on said bonds that may now or hereafter be issued, and for the retirement of said bonds at or prior to maturity, . ." in the manner provided for in the 1931 act of the General Assembly. It was provided in the ordinance of the City Council of Augusta, issuing the bonds, that all of the provisions of the act of the General Assembly should be applicable to said bonds, and a copy of the form of said bond was also set out in the ordinance, the bond specifying in its face that it should be payable solely out of the special fund known as the Augusta Light and Power revenue-bond sinking-fund, established in accordance with the act of the General Assembly, and providing that the bond should not in any sense or in any wise be or be held, considered, or regarded as an indebtedness of the City Council of Augusta, nor should said city be required by the holder, under any circumstances, to levy taxes or pledge its general municipal revenues to the payment of the bond. Notice of all material terms of the contract is included in the form of the bond.

The plaintiffs, as citizens and taxpayers, filed their petition set-

ting out that the contract between the commission, the power company, and the city was beyond the power of the Augusta Canal Commission, for various reasons, and that the obligations in the contract created new debts of the City of Augusta, not for temporary loans to supply casual deficiency of revenues, in violation of paragraph 1, section 7, article 7 of the constitution, and asked that the contract be declared null and void and be canceled, and that defendants be enjoined from performing or carrying out the contract. An intervenor came into the suit as a citizen and taxpayer and a domestic user of electricity, joined in the prayers of the petition, and alleged that the act of the legislature and contract pursuant thereto had the effect of creating unconstitutional debts. The defendants filed demurrers and answers. On interlocutory hearing it was stipulated between attorneys for all parties that all of the plaintiffs and the intervenor are citizens of and taxpayers to the City of Augusta, and are domestic users of electricity. The plaintiffs introduced in evidence the contracts and the ordinances mentioned above. The defendants introduced deeds showing the proprietary rights of the City of Augusta in the Augusta canal, and the history of the development of the canal; and affidavits and oral testimony with reference to the proposed hydroelectric development; and an option dated January 13, 1936, between the City Council of Augusta, the Augusta Canal Commission, and the Georgia Power Company, which gave the canal commission the option to install a second generating unit for the plant, as provided for in the original co-operative contract. They introduced in evidence a letter of P. S. Arkwright, President of the Georgia Power Company, dated January 30, 1936, giving the canal commission authority, at its option, to strike from the contract of December 9, 1935, all of the provisions of paragraphs 6 and 7 of the contract between the City Council of Augusta and the Augusta Canal Commission, dated December 6, 1935, and to substitute therefor a paragraph containing an agreement by the Augusta Canal Commission to furnish and supply to the City of Augusta, from year to year, such electric current as it needed in its municipal operations, and that the city should pay therefor in accordance with the rates of the said commission, and approved by ordinance of the then city council for that year. The defendants also introduced in evidence a letter from the Augusta Canal

Commission to the City Council of Augusta, dated January 31, 1936, giving the City Council of Augusta the option to strike out paragraphs 6 and 7 of the contract of December 9, 1935, between the Augusta Canal Commission and the City Council of Augusta, and to substitute therefor the new paragraph as set out in the letter from the president of the Georgia Power Company to the commission.

An injunction was denied; and the plaintiffs and the intervenor excepted.

In the view we take of the case the question whether or not the contract between the Augusta Canal Commission, the City Council of Augusta, and the Georgia Power Company, when construed with the amendment to the charter of the City of Augusta (Georgia Laws 1931, p. 673), to which said contract relates, would, if carried out, create a debt against the City of Augusta within the meaning and in violation of article 7, section 7, paragraph 1, of the constitution of Georgia (Code, § 2-5501), is controlling. It is unnecessary to repeat here the language of said constitutional provision. In *Renfroe* v. *Atlanta*, 140 *Ga.* 81 (78 S. E. 449, 45 L. R. A. (N. S.) 1173), the principle that a debt may be created against a municipal corporation, in violation of the constitutional provision, even though no liability is placed upon the municipality which may be enforced in the future by the compulsory levy of taxes, was applied. This principle was followed in *Byars* v. *Griffin*, 168 *Ga.* 41 (147 S. E. 66). Therefore the instant case is not determined merely by the provisions in the amendment to the charter of the City of Augusta (Georgia Laws 1931, p. 673), creating the Augusta Canal Commission, and in the contract sought to be enjoined, and in the bonds themselves, that the bonds shall be payable solely out of the special sinking-fund created from the revenues derived from the operation of the hydroelectric plant and distribution system, and that such bonds shall not "be or be regarded as general indebtedness of said city, nor shall the city be required to levy taxes or pledge its general municipal revenues to the payment of said bonds, and/or any interest thereon." We must look to the act of the General Assembly, the amended contract between the Augusta Canal Commission, the City Council of Augusta, and the Georgia Power Company, and the ordinances of the City Council of Augusta with reference to the bond issue, and

determine whether or not the plan for the acquisition of the hydro-electric plant and system by the city transgresses the constitu-tional provision. The funds to be used in the construction are a grant from the Federal Emergency Administration of Public Works in the sum of approximately $193,000, made to the Au-gusta Canal Commission for the project, and $674,000 proceeds of revenue bonds, the full subscription of which the Georgia Power Company agrees to underwrite. The city does not pay any money out of its treasury into the construction of the hydroelectric plant and distribution system. But the Augusta canal, the present property of the City of Augusta, and the water therefrom, will be an important part of the hydroelectric plant, without which the plant could not operate. The income from the sale of electric power generated by the plant can not in any sense be considered as produced solely by the power-house, generator, turbine, and trans-mission lines, exclusive of the canal and water therein. The fact that at the present time the city may be deriving no income from the surplus water in the canal is, in our opinion, immaterial. The canal and the water are valuable property of the city. Other prop-erty will be combined with them to produce income from the whole. But the income from the entire development, canal, water, and hydroelectric generating plant, and the distribution system, is charged with the payment of the revenue bonds to be issued and sold for the purpose of constructing the plant and system. It is provided that all revenues in excess of the maintenance and opera-tion costs, and the amounts of judgments and approved claims for injury to persons or property, and the cost of any insurance cover-ing the same, shall be paid into the sinking-fund, which fund shall be used solely for the payment of the revenue bonds and interest thereon.

Also we must consider that paragraph of article 13 of the amended contract between the canal commission, the city council, and the power company, which provides: "If for any reason said bonds, or any of them or any interest thereon, become in default, or if said bonds or any of them shall be declared invalid by any court of competent and final jurisdiction, and the payments of principal or interest thereon shall cease as a result thereof, then and in any such event, except as in case of the exercise of the option as hereinafter provided in article 14 hereof, a majority in

amount of the then bondholders shall have the right to apply to any court of competent jurisdiction for the appointment of a receiver or trustee to take over the operation of said plant, distribution lines, and all accessories, and the right to use the water in said canal under the same conditions as they would have been operated or used by the commission. The court shall have the right in its discretion to appoint such receiver or trustee, and determine his necessary qualifications; and such receiver or trustee, when appointed, shall have all rights and powers formerly held by the commission. Such operation by a receiver or trustee so appointed shall continue, subject to the orders of the court making the appointment, and until the net profits of the plant are sufficient to make all payments theretofore due and such payments have been made, or until the defaulted payments are otherwise paid; and thereafter the commission shall again assume operation of the plant under the terms hereof." Under this provision the City of Augusta and its canal commission may be deprived of the operation of the plant, and be deprived of the beneficial use of its present property, the canal, which was not constructed with proceeds of the revenue bonds, and the water therein, for an indefinite period, unless it makes the defaulted payments on the bonds. Does the option afforded to the City Council of Augusta by article 14 of the contract, which contract otherwise seems to closely resemble those which have been adjudicated to create a debt, have the effect of relieving against this apparent illegality? We do not think so. There is no assurance that any future council will exercise this option. Even by its exercise the city will for a long term of years, ten years at least, be wholly deprived of the plant into which has gone income produced from the water in its canal and in which it has the further equity of the public-works grant, and this equity can be recaptured only by large payments of money, unless the council permits the power company to operate the plant for itself for thirty years.

In City of Campbell v. Arkansas-Missouri Power Co. (C. C. A.), 55 Fed. (2) 560, 563, the court considered a contract made by a city for the purchase of certain machinery for a contemplated light plant. In discussing whether or not a debt was created the court said: "There is, however, further reason for holding that this contract resulted in creating a debt. The machinery sold to

the city, as has been pointed out, does not constitute the entire plant which generates and distributes the electric current and produces the revenue for such service. It required in addition to this machinery the equipment and the power-house owned by the city. The purchase-price, under the provisions of this contract, is not to come alone from the earnings of the property sold. Under such circumstances, the obligation to pay the income of the property other than that purchased is not different from an obligation to pay with any other funds." The "pecuniary coercion" which was noted in *Renfroe* v. *Atlanta,* supra, is present in this case. We are of the opinion that this case is controlled by the principle of *Renfroe* v. *Atlanta, Byars* v. *Griffin,* supra, and *Dortch* v. *Southeastern Fair Asso.,* 182 *Ga.* 633 (186 S. E. 685). It is accordingly held that the contract between the Augusta Canal Commission, the City Council of Augusta, and the Georgia Power Company, if carried out, would create a new debt against the City of Augusta, not for a casual deficiency in revenue, without submitting the question of incurring the debt to the qualified voters of the municipality at an election held for that purpose. This ruling renders unnecessary a consideration of other questions in the case. It was error to refuse to grant an interlocutory injunction on the petition of the plaintiff citizens and taxpayers. *Renfroe* v. *Atlanta,* 140 *Ga.* 81.

*Judgment reversed. Beck, P. J., Gilbert and Bell, JJ., and Dickerson, Graham, and Rourke, JJ., concur.*