CITY OF VALDOSTA *et al.* v. SINGLETON *et al.*;
*et vice versa.*

Nos. 14679, 14706.  JANUARY 12, 1944.

*O. W. Franklin* and *Copeland & Dukes,* for plaintiff in error.

*E. D. Rivers, A. J. Little, T. E. Miller, Langdale, Smith & Tillman,* and *T. G. Connell,* contra.

BELL, Chief Justice. After a careful consideration of the record and the various questions involved, we have reached the conclusion that a proper decision upon three general questions will require an affirmance, and in this view, we are omitting all reference to other questions, as well as the facts posing them.

In brief, it is our opinion, (1) that the judge did not err in holding that he was not disqualified, (2) that the plaintiff as a taxpayer alleged such a state of facts as entitled him to be heard, and (3) that under the constitutional amendment of 1943, issuance of the electric revenue certificates as proposed would be unauthorized. We shall now deal with these several propositions in the order stated.

The question as to disqualification of the trial judge is presented in several phases. First, it is contended that he was disqualified by relationship within the sixth degree to stockholders of Georgia Power and Light Company, and because this company, though not a party to the record, was a party at interest, in that

it owned and operated the electric distribution system, acquisition of which by purchase or condemnation was contemplated by the City of Valdosta through its mayor and council. The judge stated that he was related within the prohibited degree to two named persons who owned preferred stock in this company; but even so, the mere fact that the city might intend in some manner and at some future time to acquire such electric distribution system would not cause any interest of the power company to be involved in the present litigation. It does not appear that there is any contract between the city and the power company, or that any negotiations have taken place between them, and the company may or may not desire to sell. Although the resolution in question referred incidentally to this company as presently owning and operating the desired electric distribution system, and there were similar references to the same company in the plaintiff's petition, the only questions for adjudication, aside from the plaintiff's right to sue, were as to the validity of the resolution adopted by the mayor and council, providing for issuance and sale of revenue certificates, and as to authority of the city to acquire and operate an electric distribution system as proposed. The power company could not be affected in a legal sense, either favorably or unfavorably, by any adjudication upon these questions.

Under the act of March 28, 1935, a judge is disqualified to preside in any case when he is related by consanguinity or affinity to any party interested in the result of the case, within the sixth degree, as computed according to the civil law. Ga. L. 1935, p. 396; Ga. Code Ann., § 24-102.

Before a judge will be disqualified because of relationship to one who is not a party to the record, the latter must have a pecuniary interest in the result of the case or matter, and the facts above enumerated would not show such interest on the part of the power company. Regardless of the present litigation and its outcome, the company will be as free as ever to accept or reject any offer that may be made to purchase its property, and equally as free to protect its interests in any condemnation proceeding that may be hereafter instituted.

Just as a judge is not disqualified merely because of an interest in some abstract legal question that is presently involved and that may arise in some future litigation affecting him or his property

rights, so an interest of like nature by his relative would not disqualify him. In neither case would there be a pecuniary interest in the result of the litigation within the meaning of the law. 30 Am. Jur. 773, § 57; 33 C. J. 993, § 136.

Accordingly, there is no merit in the first contention as to disqualification. See in this connection, *Pattison* v. *Farkas,* 180 *Ga.* 798 (180 S. E. 831); *Hicks* v. *Shropshire,* 195 *Ga.* 29 (22 S. E. 2d, 793); *Roberts* v. *Roberts,* 115 *Ga.* 259 (41 S. E. 616, 90 Am. St. R. 108); *State Mutual Life Insurance Co.* v. *Walton,* 142 *Ga.* 765 (83 S. E. 656); *Dobbins* v. *Marietta,* 148 *Ga.* 467 (97 S. E. 439); *Georgia Power Co.* v. *Watts,* 184 *Ga.* 135 (190 S. E. 654, 110 A. L. R. 465).

Secondly, it is contended that the Georgia Power & Light Company took an actual interest in the litigation by employing attorneys to contest the defendants' authority to acquire an electric distribution system, and that it was thus the real party behind the intervention filed in the names of individual taxpayers. The burden was upon the defendants to establish the alleged disqualification, and after a careful examination of the evidence, we cannot say that it demanded a finding in their favor. It does not conclusively appear that the person mentioned as president of the power company, in discussing this matter with attorneys, was acting in his representative capacity. Nor would the mere fact that one of the attorneys who represented the intervenors was the regular attorney for the power company make the latter a party at interest; and under the evidence as a whole the judge was authorized to find that the company did not employ any of the attorneys for the intervenors, and was not otherwise interested in the intervention.

In this view, we have merely assumed without deciding, that a judge may be disqualified to pass upon a demurrer to an original petition because of relationship to an *intervenor* in the same case, where the intervention has merely been allowed and ordered filed as part of the record, and no further action has been taken thereon. See, in this connection, *Clay* v. *Coggins,* 148 *Ga.* 543 (97 S. E. 623); *Nixon* v. Superior Court, Pacific County, 87 Wash. 603 (152 Pac. 1); City of San Diego *v.* Andrews, 195 Cal. 111 (231 Pac. 726); 33 C. J. 1007, § 162.

Nor do we determine whether a judge may be disqualified by

relation to one who employs attorneys to prosecute the litigation, but is not a party thereto, and is not otherwise interested. See, in this connection, *Mayor &c. of Montezuma* v. *Minor, 73 Ga.* 484 (4); *Tibbs* v. *City of Atlanta, 125 Ga.* 18 (2) (53 S. E. 811); *Lyens* v. *State, 133 Ga.* 587 (4) (66 S. E. 792); *Moore* v. *Dugas, 166 Ga.* 493 (4) (143 S. E. 591); *York* v. *State, 42 Ga. App.* 453 (35), 466 (156 S. E. 733).

In any view of these questions, it cannot be said that the judge's ruling was erroneous.

Nor is there any merit in the third and final contention that the judge was disqualified because the suit was brought by a citizen and taxpayer in behalf of himself and others similarly situated, and the judge, being a citizen and taxpayer of the City of Valdosta, was a person similarly situated; and this is true although the suit was predicated upon the theory that unless the prayers of the petition should be granted, an additional burden would fall upon the taxpayers.

As to this point, the rule is that no judge shall sit in any cause or proceeding in which he is pecuniarily interested. Code of 1863, § 199; Code of 1933, § 24-102. Under this principle, it is generally held that an interest which a judge has in a public matter in common with other general taxpayers is not sufficient to disqualify him, and that his interest must be direct and immediate before he will be disqualified. Although no question as to tax burden was involved in *Mayor &c. of Montezuma* v. *Minor*, supra, the rulings in that case are enlightening here. The question at issue was whether a mill pond in the City of Montezuma should be abated as a public nuisance. The matter was tried before the mayor and council, and it was insisted by the defendant that they were disqualified. It was held by this court that the interest of such officers in common with other citizens of the town, by reason of their residence therein, would not disqualify them, but that "where a member of council has a personal interest in the result of the case, he is not competent to preside in it."

Thus, where a suit of a taxpayer merely seeks to enjoin officials from entering into some proposed contract on the ground that its performance or enforcement would increase the general tax burden, the judge, though a taxpayer, would not be disqualified to preside therein; whereas, in a case where his interest would be directly and

immediately affected, he would be disqualified. 30 Am. Jur. 775, 776, §§ 63, 64; 33 C. J. 995, 996, § 140. In each of the following cases it was held that the judge had no such direct and immediate interest as would disqualify him: Cuyamaca Water Co. v. Superior Court of California In and For San Diego County, 193 Cal. 584 (226 Pac. 604, 33 A. L. R. 1316); McMullen v. Johnson, 93 Fla. 693 (112 So. 462); Bramlett v. Dallas (Tex. Civ. App.) 11 S. W. 2d, 209; Sheldon v. Board of Education of City of Lawrence, 134 Kan. 135 (4 Pac. 2d, 430); Elliott v. Scott, 119 Tex. 94 (25 S. W. 2d, 150.; McInnis v. Brown County Water Improvement District No. 1 (Tex. Civ. App.) 41 S. W. 2d, 741; Sioux City v. Western Asphalt Paving Corporation, 223 Iowa 279 (271 N. W. 624, 109 A. L. R. 609).

In the cases next following, the judges were held disqualified upon the theory that they were presently interested: Meyer v. City of San Diego, 121 Cal. 102 (53 Pac. 434, 66 Am. St. R. 22, 41 L. R. A. 762); McMullen v. Thomas, 99 Fla. 562 (126 So. 747); Broward County Port Authority v. Ake, 111 Fla. 132 (150 So. 272); Ake v. Tedder, 110, Fla. 361 (149 So. 329). In some of these cases, existing liens or assessments were involved. While there may be some conflict in the adjudications, clearly in the instant case no present right of the judge would be affected, and accordingly he was not personally or pecuniarily interested in the action, so as to be disqualified from presiding therein.

The case of *Dobbins* v. *Marietta,* supra, cited for the plaintiffs in error, involved anticipated paving assessments against abutting property, and the persons to whom the judge was related were not mere general taxpayers, but were owners of abutting property that would be directly and immediately affected, as by a lien.

In *Gaskins* v. *Gaskins,* 181 *Ga.* 124 (2) (181 S. E. 850), the judge was a depositor in a failed bank, and it was held that recovery of the money judgment as sought by the plaintiff against the Superintendent of Banks would diminish the general assets of the bank, on which the judge as a depositor would depend for payment of his debt.

Nor was City of Grafton v. Holt, 58 W. Va. 182 (52 S. E. 21, 6 Ann. Cas. 403), a suit by taxpayers. The plaintiffs were consumers of water, which they purchased from the city, and the object of the suit was to enjoin the city from increasing water rates. The judge

was held disqualified, not as a citizen and taxpayer, but as a consumer of water, in the same class as the plaintiffs. The court in its opinion said: "Water rates exacted by a public corporation from actual consumers are not taxes, but are merely the price of a commodity. The charges for water do not constitute a uniform assessment against all or any persons or property within the city. It is wholly optional with the consumer whether or not he will take water from the city waterworks. All of the inhabitants may refuse to do so, and in that event the water rates cannot be collected from them." Accordingly, the court did not rule upon the present question.

From what has been said, we cannot sustain any of the contentions of the plaintiffs as to disqualification of the trial judge.

■ The next question is whether the plaintiff shows right as a citizen and taxpayer to maintain the suit. It is urged by the plaintiffs in error, defendants in the trial court, that the plaintiff failed to show that he has sustained any damage or injury by the past action of the mayor and council, or that he is in peril of being damaged by any proposed action on their part. We cannot sustain this contention.

It appears from the petition that the mayor and council have already adopted a resolution, wherein they determined to issue and deliver electric revenue certificates in the amount of $1,000,000, payable in future years, for the purpose of borrowing money, with which to acquire an electric distribution system, and that they intend to execute the entire plan as proposed, in so far as their own efforts are concerned. The plaintiff alleges, among other things, that the proposed undertaking would violate the constitutional provision prohibiting municipal corporations from incurring any new debt except as therein prescribed (Code, § 2-5501), and he seeks an injunction, as a citizen and taxpayer. While his suit should be dismissed if his legal contentions are incorrect, he is entitled to seek and obtain an adjudication as to validity of the undertaking, and it is not a sufficient reply that the project will be a self-liquidating one, and none of the money borrowed can ever be paid from the public treasury or from taxation. The validity of the undertaking as related to public debt is one of the very questions which the plaintiff seeks to have determined, and his suit ought not to be dismissed upon the theory that a self-liq-

uidating project could never injure him as a taxpayer. The defendants' contention as to the manner of payment is one to be addressed primarily to the merits of the plaintiff's complaint, and not to his interest as a taxpayer.

The plaintiff was not obliged to wait until issuance and sale of the revenue certificates or until any other contract was actually executed, where it appeared with reasonable certainty that the defendants would proceed with the proposed undertaking, unless enjoined. Where a party has knowledge of his rights and does not act with diligence he may become estopped because of his own laches. *Holt* v. *Parsons*, 118 *Ga.* 895 (45 S. E. 690); *Board of Drainage Commissioners* v. *Arnold*, 156 *Ga.* 733 (3) (120 S. E. 310); *Mayor &c. of Savannah* v. *Fawcett*, 186 *Ga.* 132 (197 S. E. 253). The petition does not rest on mere apprehension, but shows sufficient probability of danger, if the proposed revenue certificates would violate the debt clause of the constitution, as contended.

As to the right of a taxpayer to be heard in such a case, only a few cases need be noticed. In *Blake* v. *Mayor &c. of Macon*, 53 *Ga.* 172, citizens and taxpayers sought injunction to restrain the City of Macon from carrying out an agreement to indorse bonds of a street railroad company. Injunction was refused and complainants excepted. This court said: "We are clear that the proposed indorsement is *ultra vires*, and that the injunction should have been granted. Judgment reversed."

In *Keen* v. *Mayor &c. of Waycross*, 101 *Ga.* 588 (2), 594 (29 S. E. 42), it was held that any citizen and taxpayer may as such obtain an injunction restraining municipal authorities from engaging in business *ultra vires*. In that case it was contended that the plaintiff-taxpayer was not hurt because the business was being conducted at a profit. This court said: "Though now conducting the business at a profit, the time may come when, through mismanagement or fraud on the part of its officers, the municipality may not be able to say that its accounts are 'on the right side.' At all events, this is not a matter which should be left for the future to determine."

In *Mitchell* v. *Lasseter*, 114 *Ga.* 275 (4) (40 S. E. 287), citizens and taxpayers sued for injunction to prevent county commissioners from carrying into effect an order providing for location of a county-site, in the execution of which it would be necessary either

to expend money or to incur an "illegal indebtedness." This court, after holding that the order was invalid, and referring to the right of taxpayers to seek injunction against unauthorized use of public money, said: "In addition to this, the county commissioners were preparing to enter into contracts, which, although invalid for want of power to make the same, would entail upon the county expense and loss in resisting the efforts of those who might claim under the contracts to enforce the same. Any taxpayers of the county had a right to apply to a court of equity to prevent the county commissioners from making contracts which they had no authority to make."

In *Mayor &c. of Americus* v. *Perry,* 114 *Ga.* 871 (6) (40 S. E. 1004, 57 L. R. A. 230), it was held that the plaintiffs in their capacity of citizens and taxpayers were "entitled to be heard, the case made being one where the municipal authorities were going beyond their power and doing acts which, if carried into effect, would either result in a misappropriation of public funds *or entail upon the taxpayers of the city the expense of litigating with persons who might hold claims against the city under the invalid* ordinances." (Italics ours.) See also, *Renfroe* v. *Atlanta,* 140 *Ga.* 81 (4), 99 (78 S. E. 449, 45 L. R. A. (N. S.) 1173); *Morton* v. *Waycross,* 173 *Ga.* 298 (160 S. E. 330); *Dortch* v. *Southeastern Fair Association,* 182 *Ga.* 633 (186 S. E. 685); *Cartledge* v. *Augusta,* 183 *Ga.* 414 (3) (188 S. E. 675).

As to this question, counsel for the plaintiffs in error cite and rely upon the following cases: *Reid* v. *Mayor of Eatonton,* 80 *Ga.* 755 (6 S. E. 602); *Plumb* v. *Christie,* 103 *Ga.* 686 (2) (30 S. E. 759, 42 L. R. A. 181); *Blanton* v. *Merry,* 116 *Ga.* 288 (42 S. E. 211); *Hazleton* v. *Atlanta,* 147 *Ga.* 207 (4) (93 S. E. 202); *Cathcart Van & Storage Co.* v. *Atlanta,* 169 *Ga.* 791 (151 S. E. 489); *Southern Oil Stores Co.* v. *Atlanta,* 177 *Ga.* 602 (170 S. E. 801); *Brimer* v. *Jones,* 185 *Ga.* 747 (196 S. E. 435); *Miller* v. *Head,* 186 *Ga.* 694, 715 (198 S. E. 680); *Zaring* v. *Adams,* 188 *Ga.* 97 (3 S. E. 2d, 635). We have examined all of these cases, and do not think that any one of them would support a ruling that a general taxpayer could not at least complain in court, under facts like the present. Whether there be merit in the complaint, is a different matter.

In *Blanton* v. *Merry,* supra, citizens and taxpayers sought to en-

join the mayor and aldermen of the town of Pelham from operating what appeared to be a self-financing liquor dispensary. This court held: "A court of equity will not, at the instance of a taxpayer as such, enjoin an ultra vires municipal act the doing of which can in no wise injuriously affect him." But as shown in the opinion, "plaintiffs admitted on the hearing . . that the dispensary was being operated without any cost whatever to the town and without any possibility of the town ever becoming indebted in any way for its operation." Unless we may treat that decision as turning on this admission, it would seem to be contrary to earlier unanimous decisions in *Blake* v. *Mayor &c. of Macon, Keen* v. *Mayor &c. of Waycross,* and *Mitchell* v. *Lasseter,* supra, and would thus fall as a precedent. Code, § 6-1611. It was clearly bottomed, however, upon the stated admission, and is therefore distinguishable. Since the *Blanton* case is more like the present case as to the right of a taxpayer than any of the others relied on by the plaintiffs in error, and even that case is distinguishable, we do not deem it necessary to discuss the other cases.

In *Renfroe* v. *City of Atlanta,* supra, the court disposed of the taxpayer's right to sue with this statement: "The entire case hinges upon the question whether the contract under consideration attempts to create an illegal indebtedness on the part of the city." For similar reason, we sustain the right here, and we will now proceed to inquire into the merits of the attack.

■ It is declared in the constitution: "The debt hereafter incurred by any county, municipal corporation or political division of this State except as in this constitution provided for, shall never exceed seven per centum of the assessed value of all the taxable property therein and no such county, municipality or division shall incur any new debt except" to supply casual deficiencies of revenue, "without the assent of two thirds of the qualified voters thereof, voting at an election for that purpose to be held as prescribed by law." Code, § 2-5501.

In 1937, the General Assembly passed an act authorizing counties and municipalities to establish "revenue-producing undertakings," to be acquired and financed solely from revenues produced thereby. This act was approved on March 31, 1937. Ga. L. 1937, p. 761. In section 19 appears the following statement of intention: "The General Assembly hereby declares its intention that

the limitations of the amount or percentage of, and the restrictions relating to indebtedness of a municipality and the incurring thereof contained in the constitution of the State and in any general, special, or local law, shall not apply to certificates and the issuance thereof under this act." In *Miller* v. *Head,* supra, it was held that this statute, as applied to a water-works system, to be established as a self-liquidating project, did not contemplate the creation of a *debt* within the meaning of the foregoing debt clause, and therefore did not violate that provision. In 1939, the legislature passed an act amending the act of 1937, so as to make its provisions applicable to extensions and betterments of existing plants. This act was approved on March 14, 1939. Ga. L. 1939, p. 362. In *Lawson* v. *City of Moultrie,* 194 *Ga.* 699 (22 S. E. 2d, 592), this act was also sustained as against the contention that it violated the foregoing provision of the constitution.

Such was the state of the law at the time the present suit was filed, June 1, 1943, and at the time the judgment was rendered, July 16, 1943. But before the case was argued in this court, the above-stated provision was amended by adding a proviso to the effect that revenue-anticipation obligations issued by any county or municipal corporation to provide funds for the construction, extension or improvement of any revenue-producing facility which such county or municipality is authorized to construct and operate under the act of the General Assembly of March 31, 1937, known as the "Revenue Certificate Laws of 1937," as amended by the act of March 14, 1939, "shall not be deemed debts of, or to create debts against, the issuing political sub-division within the meaning of this paragraph or any other of this constitution." The amendment continued with a further clause as follows: "This proviso shall apply only to revenue anticipation obligations issued to provide funds for the construction, extension, repair, or improvement of such facilities and undertakings as are specifically authorized and enumerated by said act of 1937, as amended by said act of 1939; and no such issuing political sub-division of the State shall exercise the power of taxation for the purpose of paying the principal or interest of any such revenue anticipation obligations or any part thereof." For reference, the amendment has been quoted in full in the statement preceding this opinion.

Counsel for the defendant in error, plaintiff in the trial court,

without waiving other points, invoked the amendment of 1943 as being applicable to the case here presented, and as requiring an affirmance, regardless of other questions. We agree with counsel in the position thus taken, but, aside from the merits, it involves a question of practice that should be first noticed, and that is whether, in deciding the case, we should apply the law as it existed at the time the judgment of the trial court was rendered, or as we find it to be at this time.

The authorities are in conflict on this question, but apparently the weight of authority is to the effect that a reviewing court should apply the law as it exists at the time of *its* judgment rather than the law prevailing at the rendition of the judgment under review, and may therefore reverse a judgment that was correct at the time it was rendered and affirm a judgment that was erroneous at the time, where the law has been changed in the meantime and where such application of the new law will impair no vested right under the prior law. That such is the accepted rule in this State is shown by the following decisions: *Western Union Telegraph Co.* v. *Smith,* 96 *Ga.* 569 (23 S. E. 899) ; *Western Union Telegraph Co.* v. *Lumpkin,* 99 *Ga.* 647 (26 S. E. 74) ; *Bullard* v. *Holman,* 184 *Ga.* 788 (193 S. E. 586, 113 A. L. R. 763) ; *Bowers* v. *Keller,* 185 *Ga.* 436 (195 S. E. 447) ; *Hoover* v. *Brown,* 186 *Ga.* 519 (4), 526 (198 S. E. 231) ; *Town of McIntyre* v. *Scott,* 191 *Ga.* 473 (3), 475 (12 S. E. 2d, 883). See also *Pritchard* v. *Savannah Street &c. Railroad Co.,* 87 *Ga.* 294 (13 S. E. 493, 14 L. R. A. 721) ; Carpenter *v.* Wabash Railway Co., 309 U. S. 23 (60 S. Ct. 416, 84 L. ed. 558) ; Abraham *v.* National Biscuit Co., 89 Fed. (2d) 266 (111 A. L. R. 1313) ; Evans *v.* Finley, 166 Or. 227 (111 Pac. 2d, 833, 133 A. L. R. 1318) ; 3 Am. Jur. 668, § 1157.

Counsel on both sides seem to recognize this rule, for they have discussed the amendment of 1943 only in relation to its meaning; there being no contention that it should not be applied under the present writ of error, if on proper construction it does have the effect of bringing the proposed revenue certificates within the debt clause.

The defendants have not yet issued the revenue certificates, but merely proposed to issue them, and no vested right is involved. If this amendment does apply to such instruments as a means of financing an electric distribution system, they can never be law-

fully issued for the purpose stated, without assent of the requisite majority of qualified voters; and in the circumstances, we think the case is a proper one for applying the new law instead of the old in determining whether the judgment should be affirmed or reversed.

Now as to meaning of the amendment. As may be seen on examining the revenue-certificates acts of 1937 and 1939, these laws provided for waterworks, sewerage, and some other facilities, but there was no provision for anything in the nature of an electric plant or electric distribution system.

Thus, in so far as the amendment merely sanctioned these statutes, it did not sanction revenue certificates for electric distribution systems, and for the present purpose we may assume that it did not by implication do the contrary. If the amendment had stopped at this point, it may be that a municipal corporation with sufficient charter power could provide by ordinance or resolution for the issuance of revenue certificates for acquiring and operating an electric distribution system, as a self-liquidating project, without creating a debt, under the principles ruled in *Miller* v. *Head* and *Lawson* v. *Moultrie*, supra, in reference to the acts of 1937 and 1939.

But it must not be overlooked that it is the debt clause of the constitution that was being amended, and that practically the entire amendment was dealing with the question as to what shall constitute debts with respect to the debt limit, and to the necessity of assent of the qualified voters under that clause. The acts of 1937 and 1939 had said in effect that certificates issued for financing certain income-producing projects and payable solely from income produced thereby shall not be considered as debts within the meaning of the debt clause, and this court had sustained these statutes, on the theory that such certificates *really* were not debts within the meaning of that provision. The people then amended the constitution by approving what had been said and done both by the General Assembly and by this court, even agreeing that such revenue-anticipation obligations "shall not be deemed debts of, or to create debts against, the issuing political sub-division within the meaning of this paragraph or any other of this constitution." But this was not all, for immediately following is the statement: "This proviso shall apply only to revenue-anticipation obligations issued to provide funds for the construction, extension, repair, or improve-

ment of such facilities and undertakings as are specifically authorized and enumerated by said act of 1937, as amended by said act of 1939; and no such issuing political sub-division of the State shall exercise the power of taxation for the purpose of paying the principal or interest of any such revenue-anticipation obligations, or any part thereof."

Bear in mind, all that had gone before constituted the "proviso," for the amendment began with the word "Provided;" and also that this final clause is a limitation on such antecedent proviso.

Therefore, as seems to us, the only reasonable construction is (1) that the preceding approval of the acts of 1937 and 1939 and statement as to debt shall apply *only* to revenue obligations for such projects as are "specifically authorized and enumerated" in these statutes, and (2) that even as to those certificates, in order that there may be no mistake, it was *expressly* declared that the taxing power shall never be exercised to pay them.

This, by plain implication, excludes revenue certificates payable in future years, as a means of acquiring an electric distribution system without a vote of the people, for no such facility is among those "specifically authorized and enumerated" by either of the statutes mentioned. Not that such electric certificates are outlawed, so that they may not be issued at all, but that they are subject to the conditions of the debt clause.

True, it would have been a simple matter to write into the amendment, in clear and express terms, that no revenue certificates other than those authorized by the foregoing statutes should be issued without compliance with the provisions contained in the original debt clause, but the mere fact that the clearest way of expressing a thing is not used is only a circumstance, and is not controlling. The framers of a constitution and the people in adopting it must be understood to have employed words in their natural sense, and no narrow or technical construction should be employed. Constitutions are the result of the popular will, and their words are to be understood ordinarily in the sense that they convey to the popular mind. *Epping* v. *City of Columbus,* 117 *Ga.* 263 (2) (43 S. E. 803). In the main, the general principles governing the construction of statutes apply also to the construction of a constitutional provision. *DeJarnette* v. *Hospital Au-*

*thority of Albany,* 195 *Ga.* 189 (7), (23 S. E. 2d, 716). According, the intent of the law-makers as it manifestly appears in the instrument must be given effect, even though the precise and literal sense of the terms may be different. *Sumter County* v. *Allen,* 193 *Ga.* 171, 176 (17 S. E. 2d, 567); *Board of Tax Assessors of Decatur County.* v. *Catledge,* 173 *Ga.* 656 (2) (160 S. E. 909).

Let us suppose for a moment that instead of the acts of 1937 and 1939 being incorporated merely by reference, the provisions now contained in both acts had appeared in full in the original constitution as a part of the debt clause, and had been followed by a "proviso" that revenue certificates issued in accordance therewith should never be deemed debts of the issuing sub-division "within the meaning of this paragraph or any other of this constitution." Let us suppose further that immediately following was the language, "This proviso shall apply only to revenue certificates for the establishment of such facilities and undertakings as are specifically authorized and enumerated by the foregoing provisions," none of such provisions referring to anything in the nature of an electric distribution system. Manifestly, under a debt clause thus framed, electric distribution certificates would be excluded from such "proviso;" and we are unable to reach any other conclusion, under the similar situation as presented by the original constitution and the amendment of 1943. A limitation on these certificates could be made by implication as well as by express words; and looking at the amendment as a whole and in the light of its background, we think that its underlying purpose was to end a tendency which, though permissible under the original constitution, should not, in the opinion of the people, be further extended. This intention and purpose being sufficiently expressed in the amendment as framed, must be given effect by the courts.

Applying this law, the petition stated a cause of action, and the judgment overruling the general demurrer must therefore be affirmed. This places our decision upon a controlling question, and it is unnecessary to deal with other questions.

*Judgment affirmed on main bill of exceptions; cross-bill dismissed. All the Justices concur.*