## ANN LINDSAY *vs.* ELIZABETH HILL.

### Washington, 1876.—November 7, 1876.

#### *Interest.*

The *lex loci contractus* determines the nature, validity and construction of contracts; the *lex fori* determines the remedies for their enforcement.

In order to render a contract void. for usury, it must be tainted with that offense in its inception.

The contracts and mortgage in this case not being usurious in their origin, did not become "illegal and void" under the usury law of New Brunswick, where they were executed, by the receipt of usurious interest thereon.

The forfeiture provided by the laws of New Brunswick, being in the nature of a remedy, can only be enforced in that jurisdiction.

The statute, in force in this state when the usurious interest was paid, was repealed by the act of 1870, which provides that "in the absence of any agreement in writing the legal rate of interest shall be six per cent." *Held,* that this act does not by necessary implication prohibit the taking of a higher rate of interest than six per cent under a parol agreement. *Held,* also, that it operated a change in the law as it then stood, wherein it allowed a reduction from the principal, and recovery back, of usurious interest by action.

A foreign usury statute provided in substance that the reception of extra interest for the forbearance of payment of money, after it became due, would make the contract itself for the loan of the money void. *Held,* 1. That such provision, not entering into the contract at the time it was made, and being in the nature of a forfeiture, was to be interpreted by our courts according. to the *lex fori* and not according to the *lex loci contractus.* 2. That in an action on the contract, the defendant should not be allowed, by way of recoupment, for the extra interest paid; although such extra interest was by the foreign statute recoverable by action.

ON REPORT.

WRIT OF ENTRY on mortgages of land lying in Calais, Maine. Writ, dated December 4, 1874.

*Plea,* general issue with brief statement that the amount secured by the mortgages has been paid, and nothing is due on the same.

And further, "that the contract, to secure which the mortgage of the land described in the plaintiff's writ was given, was made at St. Stephen, New Brunswick, and by its terms there to be performed ; that upon said contracts more than six per cent, interest has been received by the plaintiff from the parties thereto, and their assignees, and that by the law of said province, at the time of said payments, the receiving of more than six per cent interest made said contracts utterly void."

The plaintiff put into the case the mortgages given to her, one, by one Bixby, dated May 12, 1846, to secure payment of $2000, in five years with interest, and one by Daniel Hill and Horatio N. Hill, co-partners, dated June 1, 1848, to secure payment of a note of $1000 in one year with interest. Indorsements of payments of interest, not specifying any sum, were made upon each mortgage annually, or nearly so, to June 1, 1872, in the handwriting of Daniel Hill.

It was admitted that the land described in the writ is the land described in the first mortgage and includes the land described in the second mortgage; and that the title of Bixby went to the Hills, co-partners, with the agreement that they should pay off the Bixby mortgage; and that their title afterwards passed to the defendant.

Daniel Hill testified, and there was no evidence to the contrary, that from and after the times the sums secured by the mortgages became due, there was annually, substantially, paid to the plaintiff, ten per cent interest thereon, on a gold basis, to the time of the last payment June 1, 1872 ; the extra interest, even without the gold premium, being more than sufficient, if deducted from the principal when paid, to pay off the entire sums secured by the mortgages.

The defendant put in, chapter 102 of the Revised Statutes of New Brunswick, revision of 1854, which is admitted to have been the existing statute at the time the contract was made.

"I.   No person shall, directly or indirectly, receive on any contract to be made for the loan of any money, or goods, more than six pounds for the forbearance of one hundred pounds for one year, and after that rate for a greater or less sum, and longer or shorter time ; and all deeds or contracts for the payment of any money to be lent, or for the performance of anything undertaken, upon or by which more than such rate of interest shall be reserved or received, shall be utterly void.

II.   Whoever shall upon any such deed or contract receive, by means of any fraudulent loan, bargain, exchange or transfer of any money or goods, or by any deceitful means for the forbearing or giving day of payment beyond a year, of his money or goods,

more than six pounds for one hundred pounds for one year, and after that rate for a greater or less sum, and longer or shorter time, shall forfeit for every offense the value of the principal sum or goods, so loaned, bargained, exchanged or transferred, together with all interest and other profits accruing therefrom, one moiety to be paid to the Queen for the use of the province, and the other moiety to the person suing for the same, to be recovered by action in any court of record in the county where the offense may be committed, which action shall be brought within twelve months from the time of such offense."

It was "agreed that either party may cite from the New Brunswick reports, any decisions of the courts of that province applicable to the case, relating to the construction of the foregoing statute."

The full court are to render judgment according to the rights of the parties; and, if for the demandant, she is to have the conditional judgment provided by statute.

*E. B. Harvey,* for the plaintiff.

The payments made and indorsed as interest cannot be treated as payment of principal. No decided case justifies it. *Higly* v. *First National Bank of Beverly,* 24 Ohio, 76. 3 Parsons on Contracts, 115. *Houghton* v. *Page,* 2 N. H. 42.

The contracts, secured by the mortgages, were valid in their inception. To avoid a security as usurious you must show that the agreement was illegal from its origin. 3d Parsons, 115 and cases cited in note q, also at page 122. *Tate* v. *Wellings,* 3 Term R. 531, cited in *Bank of British N. A.* v. *Fisher,* 2 Allen, N. B. Rep. 1.

The contracts were between residents of New Brunswick, and made there. Their construction and validity depend on the foreign law. 3d Parsons on Con. 114. *Houghton* v. *Page,* 2 N. H. 42. *Dunscomb* v. *Bunker,* 2 Met. 8.

The statute in evidence is strictly a penal statute; and the courts of this state will not enforce or notice the penal provisions of the laws of a foreign country. *Ogden* v. *Folliot,* 3 Term R. 726, 733. *Wolf* v. *Oxholm,* 6 M. & S. 99, and other cases cited in

notes to Story on Conflict of Laws, 803. *Gale* v. *Eastman*, 7 Met. 14. 1 Hill. Mort. 373.

The taking the mortgages on property in Maine does not change the place of the contracts, as they are only accessorial to the originals which are none the less foreign. Story on Conflict of Laws, §§ 287 *a*, 293.

The alleged usurious payments were made after the debts were overdue and the contracts broken. There entered into them the considerations of the varying value of the currency, and the prices of goods received in part payment from a third party. Such payments are not usurious. *Bank of Orleans* v. *Curtis*, 11 Met. 359. *Fox* v. *Lipe*, 24 Wend. 164, cited in Hill. Mort. 18, § 17. 3 Parsons, 116, notes. *Cutler* v. *How*, 8 Mass. 257.

Defendant was not a party to the contracts secured by the mortgages. She did not make the payments charged to be usurious. Upon the Bixby mortgage the payments were not made by the original party contracting, nor by the defendant. She cannot recover here, to her own use, the penalty provided by the foreign statute, to be recovered by a local action, in the foreign jurisdiction, within a time limited and long since elapsed, half to the Queen.

It is not usury if a third person voluntarily pays a sum in excess of the legal interest. *McArthur* v. *Schenck*, 31 Wis. 673.

*F. A. Pike* and *A. McNichol*, for the defendant.

I. The excess of payment over six per cent should be deducted from the principal. Such was the statute law of our state not repealed till 1870, after nearly all the payments were made by Hill. The repealing act of 1870 provides "that in the absence of any agreement in writing, the legal rate of interest shall be six per cent." In the case at bar, there being no agreement in writing, the parties are thrown upon their rights at common law.

In *Peters* v. *Horton*, 2 Pugsley, 176, Ritchie, C. J., says "whatever doubts may once have been entertained as to the right of the party paying usurious interest to recover back any portion of the money so paid, they have long since been dissipated ; and text books and cases now all agree that when a party has paid usurious interest he may recover back the excess beyond the legal rate in an action for money had and received. This is one of the exceptions to the

general rule that when money has been paid in pursuance of an illegal contract, it is generally irrecoverable; and the reason why it is so is because the law looks on both parties as being *in pari delicto*. But in the case of payment of usurious interest it is considered that the law prohibiting the taking of more than a certain rate of interest is for the protection of men in needy and necessitous circumstances and who from their situation and condition are liable to be oppressed and imposed upon; and so they and the parties taking advantage of their distress are not *in pari delicto*. The lender on usury being regarded by the law as the oppressor and the borrower as the oppressed and injured."

This case was in 1874. The statute did not provide for the recovery back of money in the manner allowed in the case, and the C. J. put it on the common law doctrine. The case was similar to the one at bar. The debt had been paid by the payment of extra interest and $165 in excess; and the court gave judgment for the $165.

After enumerating the English authorities the chief justice says: "With these authorities, all the text books English and American agree."

The specific ground on which we place this portion of the defense is, that whenever Mr. Hill paid $300, as he says he did, for the use of $3000 for one year, he paid $180 for interest and $120 on the principal; and the contract, not made in writing, by which the plaintiff claimed to put, and did put the whole $300 to the account of interest, was illegal by the statute then existing and by the present statute.

We need make no account of the fact that the 10 per cent was paid with a gold premium; because the over-payments in any event are sufficient to extinguish the principal.

II. The law of the place of contract and performance made the payment of more than six per cent vitiate the contract.

The contracts secured by the mortgages declared on were made in New Brunswick and to be executed there. Mr. Hill and Mr. Bixby and Mrs. Lindsay were all residents of New Brunswick at the time of the execution of the contracts. The payments were all made in Mrs. Lindsay's house in New Brunswick, where she ever continued to reside.

The security, although bargained for in New Brunswick, was necessarily executed in the state of Maine; but, of course, if the sum stipulated for has been paid, or if the note and bond have been discharged, the mortgages are of no validity.

The statute given in the case is explicit and the only question is whether this court is bound by it.

By the law of New Brunswick, where the contract was made and performed, the note and bond are in the language of the statute "utterly void." Can they be revived here?

DICKERSON, J.   It is a rule of law, too well established to admit of controversy, that the nature, validity and construction of contracts are to be determined by the law of the place where the contract is made, and that all remedies for enforcing such contracts are regulated by the law of the place where such remedies are pursued.   In the one case, the *lex loci contractus,* and in the other, the *lex fori,* governs.   Foreign statutes of limitation come within the latter clause of this rule; because they affect only the time within which a legal remedy must be pursued, and not the gist of the contract itself.   In the terse language of the court in *Andrews* v. *Pond,* 13 Pet. 65.   "The legal consequences of an agreement must be decided by the law of the place where the contract was made; if void there, it is void everywhere." *Bulger* v. *Roche,* 11 Pick. 36, 37.   *Dunscomb et al.* v. *Bunker,* 2 Met. 8, 10.   *Gale* v. *Eastman,* 7 Met. 14, 16.

The contracts secured by the mortgages were made in New Brunswick and to be executed there.   The parties to the contracts, at the time they were made, resided there; and the payments were all made in that province.   The security, though bargained for in New Brunswick, was necessarily executed in this state.

The statutes of New Brunswick, R. S., § 1, c. 102, in force when the mortgages and contracts in controversy were executed, contained the following provision : "No person shall, directly or indirectly, receive on any contract to be made for the loan of any money, or goods, more than six pounds for the forbearance of one hundred pounds for one year, and after that date for a greater or less sum, and longer or shorter time ; and all deeds or contracts for the payment of any money to be lent, or for the performance

of any thing undertaken, upon or by which more than such rate of interest shall be reserved or received, shall be utterly void."

Section second of the same statute imposes a forfeiture of the principal sum lent and all the interest, upon the lender for every offense against its provisions.

In order to render a contract void for usury, it must be tainted with that offense in its inception. It is the reservation or receipt of usurious interest in pursuance of the terms of the contract itself that renders it void ; the subsequent payment of such interest upon a contract free from the taint of usury in its origin will not have this effect. 3 Parsons on Contracts, 115. *Nichols* v. *Fearson*, 7 Pet. 103. *Rice* v. *Welling*, 5 Wend. 595, 597. *Gardner* v. *Flagg*, 8 Mass. 101.

But the law is otherwise in respect to incurring the penalty or forfeiture for a violation of the law against usury. In that case, the subsequent receipt of usurious interest by the lender, upon a contract originally untainted with usury, renders him liable to the penalty or forfeiture incurred. In *Floyer* v. *Edwards*, Camp. 112. Lord Mansfield said, "In case the agreement originally for the payment of principal be legal, and the interest does not exceed the legal rate ; but afterwards upon payment being forborne illegal interest is demanded, there the agreement by retrospect is not void, but the parties are liable to the penalty of treble value." 3 Parsons on Contracts, 123. *Thompson* v. *Woodbridge*, 8 Mass. 256.

The instruments in controversy appear to have been given in the usual course of business, and upon their face are free from the taint of usury. The alleged usurious payments were made after the debts were over due and the contracts were broken. The contracts, therefore, were not void under § 1, chap. 102, R. S. of New Brunswick, but the forfeiture imposed by § 2, of the same chapter was incurred by the defendants. That forfeiture is in the nature of a remedy, which, as we have seen, can extend only to suits brought in New Brunswick, and can have no effect where a remedy is sought under our laws; in other words, the defendant, in this respect, cannot invoke the same defense in this state, that

he could make in New Brunswick. *Gale* v. *Eastman, supra.* *Dunscomb et al.* v. *Bunker, supra.*

The case is therefore to be determined by the law of the forum selected by the plaintiff for the enforcement of her rights. Can the defendant here avail herself by way of recoupment, set-off, or otherwise, of the excess paid over six per cent upon the contracts in controversy?

When the alleged usurious payments were made, our statute provided that in an action brought to recover the principal and interest, in such a case, the usurious interest might be deducted from the principal. But that statute was repealed in 1870, and, instead of it, the present statute was enacted, which simply provides that "in the absence of any agreement in writing, the legal rate of interest shall be six per cent per annum."

It is argued by the learned counsel for the defendant, that an action for money had and received lies to recover back the amount of usurious interest paid, and that to avoid circuity of action, that sum may be allowed the defendant, in extinguishment of her original indebtedness, as it exceeds that amount. The authorities indicate that where a usurious contract is declared illegal and void by statute, the money paid thereon is to be regarded as taken illegally, and as oppressively extorted from the borrower, and that, therefore, the equitable action for money had and received lies to recover it back. It is upon this ground that the authorities relied upon to support the defendant's theory, rest. This question is discussed by Shaw, C. J., in *Crosby* v. *Bennett*, 7 Met. 17, 18 ; and the distinction is expressly made between usurious contracts that are made illegal and void by statute, and those that are not, giving the equitable action for money had and received to recover back the usurious interest paid in the former case, and denying it in the latter. We think this distinction is well taken. Where the law does not prohibit usury, nor make usurious contracts illegal or void, it cannot regard the taking of a greater sum for the use of money than is fixed by law as illegal or oppressive, which is the gist of the right of recovery invoked by the defendant. It is only upon the ground that the payments made by her grantors were received in violation of law, that she claims the right to recoup ; if no law has been violated, there is no right of recoupment.

While our statute fixes the legal rate of interest at six per cent. per annum, it does not in terms nor by necessary implication prohibit the taking of a greater sum, nor declare contracts for a greater rate illegal or void.    Nor does it provide for the deduction of the amount of interest paid in  excess of this rate from the principal upon action brought therefor, or for its recovery  back where there is "no agreement in writing" in respect to interest.    It simply declares what shall be the legal rate of interest when there is no agreement in writing for a different rate.

This construction of the statute harmonizes with the action of the legislature upon this subject.    Contemporaneously with the enactment of the present statute, the legislature passed an act repealing the usury act of 1857, which contained the identical provisions for the deduction from the principal, and the recovery back, of usurious interest, where paid, that are now sought to be applied in this case.    That act of repeal was a legislative construction of the existing statute.   By its repeal of the act of 1857, and its omission to incorporate the provisions contended for by the defendants into the new statute, the legislature clearly intended to effect a radical change in the law of usury.    It would be an alarming exercise of judicial power of construction to hold that the law is the same upon the subject under consideration as it was before the statute of 1857 was repealed.   Such a construction would render the repealing act nugatory.   Language could scarcely make the intention of the legislature to abolish the remedies provided in the statute of 1857 more intelligible.    This court cannot undertake to revive by construction a doctrine which the legislature obviously intended to discard by positive enactment.   Our conclusion is that the defendants are not entitled to have the amount of usurious interest, paid by them, deducted from the contracts secured by the mor gages in suit.

*Conditional judgment for plaintiff*
*as on mortgage.*

APPLETON, C. J., WALTON, BARROWS, VIRGIN and PETERS, JJ., concurred.