MAYNARD *v.* MARSHALL.

1. The title of a law being, "An act to regulate and restrict the rate of interest in this State, and for other purposes," a provision in the body of the act declaring it unlawful for any person to reserve, charge or take any rate of interest greater than eight per centum per annum, and that any person violating this provision shall forfeit the interest and the excess of interest so charged or taken, or contracted to be reserved, charged or taken, is covered by the title and is not matter variant or different therefrom.

2. In view of the rule that statutes amending prior statutes are to be construed as intended to have operation on future transactions. only, and as having no retroactive purpose not plainly expressed, the act of September 27th, 1881, which amends the act of October 14th, 1879, does not repeal or modify the second section of the latter act, save as to contracts entered into subsequently to the passage of the amending act. The effect of the amendment was to leave persons who had violated the original act subject to forfeit the interest as well as the excess of interest charged or taken, or contracted to be reserved, charged or taken, whilst those violating the provisions of the act after the amendment would forfeit the excess of interest only.

3. There was no error in denying a new trial.

September 30, 1893. Argued at the last term.

Before Judge BOYNTON. Monroe superior court. February term, 1892.

Petition by Maynard, brought to the August term, 1886, to foreclose a mortgage given by Marshall on May 3, 1880, to secure a promissory note for $855, due December 1, 1880, bearing the following credits: March 6, 1882, proceeds of 4 bales of cotton, $177.10; February 2, 1884, $75; February 3, 1883, $131.40; December 15, 1884, $50; November 29, 1884, $35; November 25, 1885, $35; January 15, 1886, $50.51. The note says nothing as to interest; the mortgage stipulates for payment of " all legal interest." The defendant's pleas were filed on February 24, 1891. They set up payments, in addition to the above mentioned credits, amounting to $405, and a failure to deliver a brake of the value of $14, belonging to an engine, etc., the consideration of the mortgage. Also as follows : " He borrowed the sum of six hundred dollars of plaintiff for six months, and plaintiff paid, about the same time, freight upon certain machinery for defendant, amounting to the sum of seventy-four dollars, and agreed to pay interest thereon at the rate of eight per cent., and was to have given a mortgage to said plaintiff for the sum of six hundred and seventy-four dollars; whereas in fact the said mortgage was taken by the said plaintiff for the sum of eight

hundred and fifty-five dollars, which he the said defend-
ant signed in ignorance of his rights and through a
mistake, one hundred and fifty-four .04 dollars of the
said eight hundred and fifty-five dollars being usurious,"
etc.   There was a further plea of a tender, on or about
April 1, 1886, of $345 as all that was due on the mort-
gage according to the contract, and of payment to plain-
tiff of that amount with interest since the tender.   In
answer to questions submitted by the court the jury
found, that the consideration of the note was money ad-
vanced by plaintiff for defendant as a loan with which
to pay for the engine, etc., and the transaction was not
a sale; that there was usury in the transaction amount-
ing to $99.03; that the credit of $177.10 of March 6,
1882, should be $200; and of the sum claimed to have
been paid by the defendant in addition to the credits on
the note, $50 is covered by one of those credits.   It be-
ing conceded by counsel for both parties that $932 had
been paid on the note, the jury having found that there
was usury therein, and the judge having decided that
the plaintiff was not entitled to recover any interest, a
verdict in the defendant's favor was rendered.   The
plaintiff moved for a new trial, which was refused, and
he excepted.   The motion alleges that the findings of
the jury were contrary to law and evidence, because
the transaction was a sale of the engine, etc., and not
a loan, because there was no usury in the transaction,
because the defendant was not entitled to a credit of
$200 instead of $177.10, and because the first of these
findings was against the following instruction of the
court:   " If Mr. Maynard was the owner or became the
owner of the engine and separator, and he sold them to
Mr. Marshall for a price agreed on, then he had a right
to make such a transaction.   If Mr. Marshall agreed to
give more in consideration of the fact that he was al-
lowed time to pay for the property, and Mr. Maynard

charged him more by reason of giving him credit than he would if they had contracted at a cash valuation, then there would not be any usury in the transaction, because a person has a right to charge a higher price on time than for cash." The motion further alleges that the court erred in holding that the taking of usury as found by the jury, worked a forfeiture of all interest, and that the plaintiff could not recover lawful interest. Two reasons are assigned why such ruling was erroneous: (1) that the section of the act of October 14, 1879, which provides a forfeiture of all interest where more than eight per cent. per annum is charged, reserved or taken, is not covered or provided for in the title of the act; (2) that this section of the act was repealed by the act of September 27, 1881.

W. D. STONE, R. L. MAYNARD and HALL & HAMMOND, for plaintiff.

CABANISS & WILLINGHAM and BERNER & BLOODWORTH, by HARRISON & PEEPLES, for defendant.

BLECKLEY, Chief Justice.

1. The title of the act was sufficiently comprehensive to cover all the provisions embraced in the body of the statute, and nothing on this subject need be said in addition to what is set out in the first head-note.

2. The statute on the subject of interest which was of force when the note and mortgage involved in this case were made, was the act of October 14th, 1879, the first section of which was in these words: "That from and after the passage of this act, it shall not be lawful for any person, company or corporation, to reserve, charge or take for any loan or advance of money, or forbearance to enforce the collection of any sum of money, any rate of interest greater than eight per centum per annum, either directly or indirectly, by way of commissions for advances, discount, exchange, or by any contract or contrivance or device whatever." This section of the act is

still of force without modification. So, also, is the third
section of the act, which reads thus : " That the legal
rate of interest shall remain seven per centum per an-
num, where the rate per cent. is not named in the con-
tract, and any higher rate must be specified in writing,
but in no event to exceed eight per cent. per annum."
The jury have found that of the amount set forth in the
note as principal the sum of $99.03 was usury. This
means that $99.03 over and above eight per cent. interest
on the loan went into the principal of the note as a
usurious charge for the use of money loaned. It results
that as to the whole interest, including the usury, the
contract evidenced by the note was unlawful when it was
made and remains unlawful still. Inasmuch as courts
will not aid in the enforcement of an unlawful contract,
the interest is not collectible upon general principles.
Indeed, if it were not for the language of the second
section of the act, which will be presently quoted, this
illegality would taint the note, not alone as to the in-
terest, but as to the principal also ; and this it would do
without any express provision in the statute declaring
the note to be void. Such was the ruling of the Su-
preme Court of the United States in United States Bank
*v.* Owens, 2 Pet. 527. The principal of the note, and
that alone, was saved by the second section of the act,
that section being in these words : " That any person,
company or corporation violating the provisions of the
foregoing section of this act, shall forfeit the interest,
and excess of interest, so charged or taken, or contracted
to be reserved, charged or taken." It is contended,
however, that by the modification of this section, which
took place by the amending act of September 27th, 1881,
interest up to the lawful rate of interest on the princi-
pal of the loan was relieved from the taint and rendered
collectible. The first section of the amending act reads
as follows: "That section 2 of an act entitled 'an act to

regulate and restrict the rate of interest in this State, and for other purposes,' approved October 14th, 1879, which provides for forfeiture of all interest in cases of violation of its provisions, be, and the same is, hereby amended by striking out the words 'the interest and' in third line of said section, so that, as amended, it will read as follows: 'That any person, company or corporation violating the provisions of the foregoing section of this act shall forfeit the excess of interest so charged or taken, or contracted to be reserved, charged or taken.'" The second section of the amending act expressly repeals section 4 of the prior act, which relates to the mode of proof; and the third section repeals all conflicting laws. The question is, whether the first section ought to be so construed as to work a repeal, or even a partial repeal, of the second section of the amended act with reference to usurious contracts entered into prior to the date of the repealing act. The constitution of 1877 expressly prohibits the passage of retroactive laws, and the general rule laid down by the code is that laws prescribe only for the future. It is also a general rule applicable to amending statutes, that they are to be construed as intended to have operation on future transactions only, and as having no retroactive purpose not plainly expressed. The amending act left untouched sections 1 and 3 of the original act. There can be no doubt that these sections still apply to the note involved in this case, and we have already seen that they denounce in express terms the contract in that note to be illegal, both as to the interest and the excess of interest. This being so, is there the slightest probability that the legislature intended the amendment to retroact upon that note and similar contracts in existence when the amending law was passed? We think not, and so rule. The case before us is not like that dealt with by the Supreme Court of the United States in Ewell v. Daggs, 108 U. S. 143, where the whole fabric of usury laws had been swept

away by a provision contained in the constitution of Texas. Ours is a case in which the legislative declaration that the contract is unlawful is left standing upon the statute book, unmodified and unrepealed. Indeed, if this were not so, it would be difficult to abide by the principle of several decisions made by this court, and yet treat contracts as gaining a legal status by the repeal of usury laws when they did not have it at the time the parties contracted. See *Shealy* v. *Toole*, 56 *Ga.* 210; *Campbell* v. *Murray*, 62 *Ga.* 86; *Broach* v. *Kelly*, 71 *Ga.* 698. Are notes, deeds, etc., fatally vicious on account of usury, to become legally operative when the usury laws are repealed and again vicious when those laws are reinstated, and so continue to rise and fall as often as the policy of the State with respect to usury may change, or will the first change only take effect upon them and subsequent changes pass them by? We need not at present insist that the better and safer line of decision in respect to usurious contracts is the one which this court has heretofore adopted in the three cases just cited, because, whether the repeal of all usury laws would or would not infuse life into a contract which was not in it before, we can safely hold that where such laws are not repealed, so as to remove from the statute-book all denunciation of such contracts as unlawful, they get no new life by an amendment of the law which can be fairly construed as intended to operate prospectively only. We thus reach the same result in the present case, wherein the effect of the amending act of September 27th, 1881, has been made a direct question, as was reached in *Crane* v. *Goodwin*, 77 *Ga.* 362, in which the direct question appears not to have been presented.

3. The evidence was conflicting and the verdict is not altogether satisfactory to this court; but it was satisfactory to the court below, and we cannot say that there was any error in denying a new trial.

*Judgment affirmed.*