[File No. 61716.]

CHRISTINE MESSERSMITH, Appellant, v. LEO R. REILLY, Joe F. Reilly, Margaret Reilly, and Margaret Cunningham, Respondents.

(296 N. W. 920.)

Opinion filed March 8, 1941.

*C. H. Starke,* for appellant.

*T. F. Murtha,* for respondents.

BURR, Ch. J.    This is an action to foreclose a real estate mortgage given by one Anthony Reilly, and the defense of usury is interposed. The case was submitted to the trial court upon a stipulation of facts, the pertinent part of the stipulation being as follows:

"IT IS HEREBY STIPULATED AND AGREED by and between the plaintiff and defendants through their respective counsel as follows:

"That in the Answer the defendants have set out a copy of the mortgage, which was recorded November 27, 1916 in Book 40 of Mortgages, and the first extension agreement which was dated December 1, 1922 and filed for record on the 7th day of December, 1922 and recorded in Book A-15 of Misc. Records on page 151; that the second extension agreement was executed March 25, 1927 and filed for record on March 26, 1927 and recorded in Book 62 of Misc. Records on page 365.

"It is stipulated that this mortgage and two extension agreements be offered in evidence; that the defendants admit the note and execution thereof, and both parties admit the execution of the extension agreements and the mortgage.

"That the plaintiff and defendants agree that Anthony Reilly died on or about the 31st day of January, 1937; that the defendants admit all of the other allegations in the Complaint; that the defendants move for judgment on all pleadings herein."

The "other allegations in the complaint" are summarized as follows:

Anthony F. Reilly gave his promissory note to the plaintiff on November 27, 1916, due five years after date, with interest at eight per cent per annum, payable semi-annually, and to secure the payment of the note, gave the real estate mortgage in question.

On or about January 11, 1922, the parties made a written extension of the loan until November 27, 1922, and Reilly agreed to pay interest on the promissory note at the rate of ten per cent; that Anthony F. Reilly died; an administrator of his estate was appointed; the estate administered and a final decree entered whereby the real estate involved descended to and became the property of the defendants,

and they are now the owners thereof; that no part of the note had been paid "except the sum of $700 paid on or about the 17th day of December 1924, and interest at the rate of 10% per annum on the balance of $800 paid up to and including the 1st day of November 1937: That there is now due and unpaid and owing to the plaintiff on said promissory note the sum of $800 .with interest thereon at the rate of 10% per annum from November 1, 1937."

The extension agreements referred to in the stipulation are known as Exhibits "B" and "C." Ex. B was made December 1, 1922, and after reciting that the extension of the payment of the note had been made "from the 27th day of November A. D. 1922, to the 27th day of November, A. D. 1923, with interest at ten per cent from Nov. 27, 1922," and at the instance and request of Reilly, shows that Reilly, in consideration of such extension, agreed: "To pay interest on said note until the 27th day of November A. D. 1923 at the rate of 10 per cent per annum, payable semi-annually, on the 27th day of May and November in each year, to said Christine Messersmith."

Ex. C was made March 25, 1927, and after stating an extension of the payment of the note "from the 27th day of November A. D. 1926, to the 27th day of November A. D. 1928, with interest at 10 per cent from Nov. 27, 1926," recites that in consideration of the extension of the payment, Reilly agrees: "To pay interest on said note until· the 27th day of November A. D. 1928, at the rate of 10 per cent per annum, payable annually, on the 27th day of November in each year to said Christine Messersmith."

The note bears the following indorsements:

"Interest paid to November 27—1921 by A. F. Reilly

"Payment of this note and real estate mortgage given· to secure it is extended until Nov. 27th 1922 at 10% interest.
"Dec. 17—1924
Pd. by check on principal          700.00
"Interest Pd. to Dec. 16—1924
"11/11/25 interest pd. to Nov. 16—1925
$80.00
"1–3–27 Int. Pd. to Nov. 27—1926—80.00"

The answer sets up a "counterclaim and countersuit of Joe F. Reilly" for the recovery of double the amount of interest he claims to have paid after the death of Anthony Reilly. A demurrer to this counterclaim was sustained by the court, and Joe Reilly does not appeal; so the question of recovery on his part is not before us.

From this evidence the trial court concluded: "That the 1927 extension agreement is usurious under the provisions of § 6073 of the 1913 Compiled Laws, but that this fact does not effect or alter the conditions of the original note, which original note bears interest before and after maturity at the rate of 8 per cent per annum; That since under said extension agreement the increased rate of interest of 10 per cent was provided during the period of the extension only the plaintiff would be entitled to recover interest at the rate of 8 per cent only from the date of the original note to the date of this judgment except during the period from November 27, 1922, to November 27, 1923, when the rate should be 10 per cent per annum: That any payments of interest in excess of the rates just outlined must be considered payments on the principal debt, and such excess payment and interest on each occasion must be applied as a credit on the principal as of the date of each payment."

The court thereupon ordered judgment in favor of the plaintiff, decreeing foreclosure to recover the sum of $454.22 with costs. Judgment was entered accordingly, and the plaintiff appeals, demanding a trial de novo.

The only matter in controversy is the amount due the plaintiff.

The note for $1,500 and the mortgage were not tainted with usury, nor was the first extension agreement. The maximum rate of interest which could be charged at the time the note and mortgage were executed was 10 per cent per annum, "and in the computation of interest the same shall not be compounded." N. D. Comp. Laws 1913, § 6073, as amended by chap. 176, Sess. Laws 1915. This remained the maximum rate of interest until 1925, when, by the terms of chap. 155, Sess. Laws 1925 (Supp. § 6073), the maximum rate of interest was reduced to "9 per cent per annum, and in the computation of interest, the same shall not be compounded." Chapter 274 of the Session Laws of

1927 amended § 6073 of the Supp., but not in any way material to the issue involved.

The practically universal rule is, where the original transaction is not tainted with usury in its inception, the fact that subsequent transactions with reference to the same matter may be usurious does not render the first transaction usurious. As the supreme court of Texas puts it: "Antecedent indebtedness is not affected by subsequent usurious renewals or extensions where the transactions are distinct." Cain v. Bonner, 108 Tex. 399, 401, 194 S. W. 1098, 3 A.L.R. 874. There is a voluminous note in 3 A.L.R. 877 et seq., with scores of cases showing the extension of this rule and its application.

The contract to take and receive interest to a greater amount than permitted by statute is the contract which is usurious. See § 6073 of the Supp., which was the statute in effect when the note, the mortgage, and the first extension agreement were executed. None of these contracts was tainted with usury in its inception, and consequently, a subsequent usurious contract supplementary in character does not render these contracts usurious. Lindsay v. Hill, 66 Me. 212, 22 Am Rep 564; Morse v. Wellcome, 68 Minn. 210, 70 N. W. 978, 64 Am. St. Rep. 471; Jones v. Payton, 147 N. Y. S. 20.

Even where the subsequent contract is to pay illegal interest in consideration of any forbearance with reference to the original transaction, this does not impart the taint of usury to the original transactions. Nance v. Gray, 143 Ala. 234, 38 So. 916, 5 Ann. Cas. 55; Real Estate Trust Co. v. Keech, 69 N. Y. 248, 25 Am. Rep. 181.

As set forth in Nichols v. Fearson, 7 Pet. (U. S.) 103, 109, 8 L. ed. 623: "There are two cardinal rules in the doctrine of usury which we think must be regarded as the common place to which all reasoning and adjudicating upon the subject should be referred; the first is, that to constitute usury, there must be a loan in contemplation by the parties; and the second, that a contract, which, in its inception, is unaffected by usury, can never be invalidated by any subsequent usurious transaction."

Neither does subsequent legislation operate retrospectively, unless clearly intended, even if retrospective legislation could affect this issue here. The rule is set forth in 66 C. J. 360, that ordinarily penalty for the exaction of usury "cannot be made to operate retrospectively

so as to apply to a contract previously made." This subsequent legislation does not render a valid contract invalid.

In Stewart v. Lattner, 53 Tex. Civ App. 330, 116 S. W. 860, it is held that the provisions of a statute permitting recovery of double the amount of interest paid on a usurious contract is prospective only, "operating only upon payments after the act took effect." This appears to be determined largely upon the peculiar language of the statute in the use of the word "hereafter," but at the same time appears to be based upon the general principle.

In Long v. Gresham, 148 Ga. 170, 174, 96 S. E. 211, 213, the court affirms its former ruling in Maynard v. Marshall, 91 Ga. 840, 18 S. E. 403, wherein it is set forth that it is not the general policy of the law upon repeals and reinstatements and subsequent repeals to have contracts "rise and fall as often as the policy of the state with respect to usury may change." The court states the rule (Maynard v. Marshall, supra) "that statutes amending prior statutes are to be construed as intended to have operation on future transactions only, and as having no retroactive purpose not plainly expressed." Such a rule is made applicable in cases where the law against usury is liberalized. Permitting a higher rate of interest would not validate a previous contract tainted with usury. See Ewell v. Daggs, 108 U. S. 143, 27 L. ed. 682, 2 S. Ct. 408.

This is the rule in this jurisdiction. In Adams & F. Co. v. Kenoyer, 17 N. D. 302, 116 N. W. 98, 16 L.R.A.(N.S.) 681, this court says: "Statutes are presumed to be prospective, and not retrospective, in their operation, in the absence of a clear legislative intent to the contrary." As late as Murray v. Mutschelknaus, ante, 1, 291 N. W. 118, the rule is reaffirmed. Therein, in this case cited, we say, "Unless the legislature clearly manifests a contrary intention, it will be presumed that the legislature intends a statute to operate prospectively only."

It is clear, therefore, that the note, the mortgage, and the extension agreement, Ex. B, were not usurious. If any contract is usurious, it must be Ex. C. Ex. C, being executed March 25, 1927, was clearly usurious, and cannot be enforced. The maximum rate of interest which could be taken or received was reduced to 9 per cent per annum, by chap. 155 of the Session Laws of 1925 (see § 6073, Supp.). Any

payment of usurious interest would be credited on the principal and interest computed on the valid contract.

The amendments to the usury statutes—chap. 140 of the Session Laws of 1933, and chap. 159 of the Session Laws of 1935, reducing the rate of interest to 8 and 7 per cent per annum respectively—have no bearing on the issue here.

This necessitates an interpretation of provisions which are common to Ex. B and Ex. C except as to dates. An examination of the provisions in these two exhibits, with reference to the time of the payment of interest at the increased rate, shows specifically a time limit beyond which the 10 per cent is not payable. In Ex. B, in consideration of the extension of time, the debtor agreed to pay interest at 10 per cent from November 27, 1922, *to November 27, 1923,* payable semi-annually; that is, he agreed to pay interest for one year at 10 per cent. Thereafter the interest specified in the note would be the rate, until the execution of Ex. C.

By the terms of Ex. C, he agreed, in consideration of the further extension, to pay the interest due on said note at the rate of 10 per cent *until the 27th day of November, A. D. 1928.* That is, he agreed to pay another year's interest at the rate of 10 per cent instead of 8 per cent.

These provisions are not without some confused statement; but clearly his promise made in 1922 to pay 10 per cent interest was limited to one year's interest and his promise made in March, 1927, was that he would pay interest at the rate of 10 per cent per annum until November 27, 1928, and that he would pay this interest annually. This means that the interest payable in November, 1927, would be computed at 10 per cent, and the interest due in November, 1928, would be at the rate of 10 per cent, and the interest due after November 27, 1928, would be at the old rate.

There is no dispute as to the payments that have been made upon the note. The note shows $800 due on and after December 17, 1924, and interest paid to November, 1925—$80, which would be 10 per cent on the $800—another indorsement of $80 for interest to November, 1926, and the complaint alleges that interest was paid thereafter at 10 per cent.

The memorandum opinion shows that the trial court, in computing

the amount due and for which he rendered judgment, applied the rules hereinbefore set forth and computed the amount due to the time of entry of judgment as $454.22. Appellant makes no claim that the amount ascertained by the trial court is not the correct amount, if the trial court applied the correct principles of law. The judgment appealed from is affirmed.

BURKE, NUESSLE, CHRISTIANSON, and MORRIS, JJ., concur.