### 65727. WEST et al. v. DORSEY et al.

BIRDSONG, Judge.

In 1973, the Wests lent the Dorseys $9,700 at 9 % interest per annum. The loan was secured by second security deeds. The Dorseys made some payments on the loan and then defaulted.

Subsequent developments in the case are set forth in *West v. Dorsey,* 248 Ga. 790 (285 SE2d 703); *Dorsey v. West,* 161 Ga. App. 253 (289 SE2d 827); *Dorsey v. West,* 159 Ga. App. 274 (283 SE2d 314). The gist of those proceedings is that because the Wests had charged 9% interest at a time when maximum allowable simple interest rate was 8 %, the loan was usurious. The penalty extracted from the Wests for their usury was the forfeiture of the entire principal and interest, and the return to the Dorseys of any payments made by them on the

loan. See *Dorsey v. West,* 159 Ga. App. 274, supra, which *reversed* the trial court's judgment in favor of the Wests.

Ultimately, this court at 161 Ga. App. 253, 254, on February 12, 1982, remitted the case to the trial court with our earlier reversal intact, and with instructions "to enter judgment in favor of the [Dorseys] for the amount paid by them on the indebtedness."

However, the trial court did not, as specifically instructed by this court, enter a judgment for the Dorseys which would have assessed the penalty of forfeiture of principal and interest and return of payments made. Rather, on March 5, 1982, the trial court merely "ordered that the judgment of the Court of Appeals of the State of Georgia in [this] case, be and the same is hereby made the judgment of this court." Thus it remained until August 31, 1982. On that date, the trial court "nunc pro tunc" entered a money judgment order requiring the Wests to pay back the $2,013.81 which the Dorseys had paid on the loan. This order still did not mention a forfeiture of principal and interest against the Wests.

In the meantime, however, the Georgia legislature passed an act effective April 12, 1982, providing in pertinent part: "Notwithstanding the provisions of other laws to the contrary, on loans of $5,000.00 or more, a person . . . or other legal entity may charge . . . interest and charges at any actuarial rate and amount and in any manner of repayment agreed upon by the parties for a loan of $5,000.00 or more amount financed, as that term is defined by the federal Truth in Lending Act, if said loan is secured in whole or in part by [second] security deed . . . executed by an individual or individuals. The claim or defense of usury by any borrower under this Code section or his successor or anyone on his behalf is prohibited." Ga. L. 1982, pp. 488, 492. This act is now codified at OCGA § 7-4-34.1 (Code Ann. § 57-204.1).

It is contended that if this act is applied retrospectively, all the penalties against the Wests for their usurious loan are wiped out completely, i.e., not "merely . . . ameliorated [but] lifted by subsequent legislation." See *Southern Discount Co. v. Ector,* 246 Ga. 30, 31 (268 SE2d 621), distinguishing *Maynard v. Marshall,* 91 Ga. 840 (2) (18 SE 403). See also *Dorsey v. West,* 159 Ga. App. 274, 275, supra (reversed on other grounds in 248 Ga. 790, supra).

The Wests have appealed the August 31, 1982 "nunc pro tunc" judgment against them. This appeal is defended by the appellees Dorsey on the ground that the appeal is untimely because the final judgment of the trial court, on remittitur from this court, was rendered in March 1982, and the August 31 order was merely nunc pro tunc and hence only "related back" to March. See *Walden v. Walden,* 128 Ga. 126 (57 SE 323). If this appeal is timely, it raises

interesting questions, which we will address solely upon the status of this case as being one involving a penalty. We will state at the outset that no grounds authorize us to rule that the $2,013.81 money judgment was incorrect as to amount. *Held:*

1. This appeal is timely. The August 31, 1982 order granting money judgment to the Dorseys was not nunc pro tunc, although it purported to be.

"The meaning of a nunc pro tunc judgment is to enter now a judgment *which was rendered* and should have been recorded at a previous time. . . . A nunc pro tunc entry is for the purpose of *recording some action that was taken or judgment rendered . . . but such entry cannot be made to serve the office of . . . supplying nonaction on the part of the court. . . .* Where the pleadings present no question that should be submitted to a jury, the judgment may be entered nunc pro tunc, but *the entry must be based on some previous judicial act. . . .*" (Emphasis supplied.) Davis & Shulman, *Georgia Practice & Procedure,* § 17-6, pp. 267-268 (4th ed.); and cases cited.

The records and pleadings in this case may disclose without dispute that the Wests had lent the Dorseys $9,700 and that the Dorseys had paid $2,013.81 on the loan, but these facts lay impotent in the record and would do so forever until the trial court made a judgment out of them, as it had been instructed to do. The trial court's remittitur order of March 5, 1982, did not make such a judgment. No execution could be made upon it; it certainly could not be appealed. See *Givens v. Gray,* 124 Ga. App. 152 (183 SE2d 29). The August 31 order granting the Dorseys a money judgment *supplied a non-action* and still omitted to enter judgment forfeiting the Wests' principal and interest. This order contained at last something to appeal by either party, if there was any error in it. See *Cordele Ice Co. v. Sims,* 120 Ga. 428, 431 (48 SE 12). The September 15 notice of appeal from the August 31 order was timely.

2. Was the August 31 penalty judgment, giving the Dorseys judgment in the specific amount they had paid on the loan, appealable solely on the basis that a law repealing the penalty had become effective before the direction of this court was complied with? The answer must be yes.

The decisions of the Supreme Court and this court became the law of the case (OCGA § 9-11-60 (h) (Code Ann. § 81A-160)) and were binding upon the trial court. Though the law penalizing the Wests had been changed, we think the trial court was bound to follow the mandate of the Court of Appeals. See *White v. Ga. Power Co.,* 247 Ga. 256, 258 (2) (274 SE2d 565).

If the final appellate decision had been one of affirmance merely, with nothing more to be done below, it would have been a

final disposition of the case with no right of review, even if the remittitur was not made the judgment of the trial court. *Pearle Optical v. State Board of Examiners,* 219 Ga. 856 (136 SE2d 371); *Fed. Investment Co. v. Ewing,* 166 Ga. 246, 247 (142 SE 890). But the ultimate decision of the Court of Appeals was one *reversing the trial court and mandating further action* by the trial court. Where the appellate decision is a *reversal,* the case does not stand finally disposed of, but remains in the jurisdiction of the trial court until some further proper action is taken. *John A. Roebling's Sons Co. v. Southern Power Co.,* 145 Ga. 761 (1) (89 SE 1075). The cause is still pending for further proceedings, or until what is de facto ordered to be done, by the appellate court's reversal, is done. *Berrien County Bk. v. Alexander,* 154 Ga. 775, 777-778 (115 SE 648); *Roebling's Sons Co.,* supra; *Perdue v. Anderson,* 137 Ga. 512, 514 (73 SE 1050); *Davis House, Inc. v. Jennings* 112 Ga. App. 185, 186 (144 SE2d 476).

We do not recite the foregoing principles and cases to contradict what was said in *Shepherd v. Shepherd,* 243 Ga. 253, 254-255 (253 SE2d 696), where the Supreme Court held that on its prior reversal of that case *without direction,* the reversal was a final disposition. We think there is no conflict in the more ancient principles announced by the Supreme Court and the *Shepherd* case. The *Shepherd* case merely forbade a party to circumvent an appellate disposition by improperly amending his allegations. *Wilson v. Missouri State Life Ins. Co.,* 184 Ga. 184, 185 (3) (190 SE 552). No penalty or forfeiture was involved and no new law lifting the penalty was in issue. *Wilson,* supra, p. 186 (4).

All these cases are consistent that what the appellate court orders to be done, expressly or implicitly, must in fact be done; but if, on an appellate reversal what is done on remittitur is itself reviewable, there is no final judgment until that time for review has passed. There was no final judgment in this case until the time had passed for review of the trial court's actions upon remittitur from this court's reversal. *Calhoun v. State Hwy. Dept.,* 223 Ga. 65, 67 (153 SE2d 418). The Dorseys had no vested right in the penalty itself, or any part of it (*Southern Discount Co. v. Ector,* supra). They had no more superior vested right in it merely because it was established by appellate decisions interpreting the penalty statute, where the trial court's first judgment denying the penalty was reversed and there remained more to be done in assessing the entire penalty. The penalty was not made a judgment until August 1982, and was not choate until the time had run for review of the last appealable judgment. See *Bank of St. Mary's v. State of Ga.,* 12 Ga. 475, 493.

In *Bank of St. Mary's,* supra, p. 481, it was held "a penalty cannot be recovered, after the [repeal] of the law which imposes it. . ."

The whole penalty in this case is forfeiture of all principal and interest as a punishment. See 91 CJS 748, Usury, § 142. There are not two penalties in this case; there is only one. The punishment, forfeiture, necessarily includes the obligation to pay back any payments made on the loan by the borrower. So long as there was no enforceable judgment requiring the Wests to pay back loan payments, there was no "forfeiture of all principal and interest" as a matter of fact. No punishment had been assessed by final judgment until after the penalizing statute was repealed. *Bank of St. Mary's,* supra, p. 475 (and see pp. 494-495) held, "No judgment can be rendered on a repealed Statute; the repeal prevents the imperfect right from being consummated; and it is competent for the Legislature to pass such repealing Statute at any time before *final judgment.*" (Emphasis supplied.) "Up to that time it was under the control of the law." *Bank of St. Mary's,* supra, p. 488. "As long as [a party] has a right of exception to *any judgment* which may have been rendered in such an action, such judgment is not final, and the repeal of the statute deprives the courts of any further jurisdiction of the case." (Emphasis supplied.) *Western Union Telegraph Co. v. Lumpkin,* 99 Ga. 647 (26 SE 74); *Fulton County v. Spratlin,* 210 Ga. 447 (80 SE2d 780). Where there is a reversal, and where there is more to be done in the case, "[t]he cause is pending just as long as it is litigated, whether in the superior court or in [the appellate court]." *Twilley v. Twilley,* 195 Ga. 297, 299 (24 SE2d 46); *Holleman v. Holleman,* 69 Ga. 676.

The trial court has jurisdiction to construe and perform the direction of the appellate court, and its doing so can always be excepted to. *Cordele Ice Co. v. Sims,* supra. This must be especially true where what is being litigated is a penalty. In taking exception to the penalty judgment, it is not necessary that the Wests prove substantive fault with the amount of the money judgment, or the forfeiture of penalty and interest. OCGA § 5-6-34 (c) (Code Ann. § 6-701). So long as the penalty has not fully and finally been assessed, the Wests can except to it merely on the basis that the law had changed before the penalty was assessed by final judgment and the Dorseys were not entitled to it. *Hensel Phelps Constr. Co. v. Johnson,* 164 Ga. App. 404, 405 (298 SE2d 261).

The Supreme Court, in *City of Valdosta v. Singleton,* 197 Ga. 194, 208 (28 SE2d 759), held: "[A] reviewing court should apply the law as it exists at the time of *its [this]* judgment rather than the law prevailing at the rendition of the judgment under review, and may therefore reverse a judgment that was correct at the time it was rendered ... where the law has been changed in the meantime and ... the new law will impair no vested right under the prior law."

(Emphasis supplied.)

The judgment under review here is the August, 1982 penalty mandated by this court. This penalty arose not by contract but by the decisions of this court and the Supreme Court under the penal statutes then existing. See *Dorsey v. West,* 159 Ga. App. 274, supra. But since we adjudged that penalty (a penalty which was inchoate until the trial court by mandate made an operative judgment of it and the time for review had passed), *the status of the law has changed. Wilson v. Missouri State Life Ins. Co.,* supra.

3. But to apply the law as it exists at the time of this appeal (*City of Valdosta v. Singleton,* supra), we must determine what is the law. Is it the 1966 law in existence when the note was executed in 1973, and when this case previously appeared in the appellate courts? Or is it the law effective April 12, 1982, which abolished the defense of usury and lifted all penalties to certain loans in excess of $5,000 (OCGA § 7-4-34.1 (Code Ann. § 57-204.1))? The new law is applied retrospectively where it impairs no vested rights. *City of Valdosta v. Singleton,* supra. In *Bank of St. Mary's,* supra, p. 494, and in *Southern Discount Co. v. Ector,* supra, the Supreme Court held that a party has no vested right to a penalty or forfeiture granted by law. Nor, as we said in Division 2, should he have any greater right to a penalty or forfeiture adjudged by case law under such a penal statute, *where the entire penalty has not been actually assessed by final judgment and is still subject to review.*

There is a decided policy at issue here: "The general position [is] that where a Statute creating an offense is repealed by a subsequent Statute. . . no punishment can be inflicted after the repeal of the first Statute. . . ." (*Bank of St. Mary's,* supra, p. 481.) A "penalty cannot be recovered after the repeal of the law by which it is imposed" (*Bank of St. Mary's,* supra, p. 485). The new law under consideration in *Bank of St. Mary's,* expressly provided for retrospective effect; but *Southern Discount Co. v. Ector,* supra, specifically held that retrospectivity is not governed by statutory language in this type of case.

The 1966 law under which the Wests forfeit the $9,700 principal and interest, *and* such amounts as they were able to collect on the indebtedness, was a penal statute egregiously severe. The traditional abhorrence of usury, a good enough object in itself, was overextended, we think, by that and similar statutes and by the cases that construed them, until the Supreme Court's decision in *Southern Discount Co. v. Ector,* supra, p. 30 (1).

The Supreme Court in 1980 said "Forfeitures and penalties are not favored. Courts should construe statutes relieving against forfeitures and penalties liberally so as to afford maximum relief.

Such a construction of the Act does not bring it into conflict with our constitution since a person has no vested rights to a forfeiture or penalty. [Cits.] Cf. *Maynard v. Marshall,* 91 Ga. 840 (18 SE 403) (1893), in which the penalty merely was ameliorated rather than lifted by the subsequent legislation." *Southern Discount Co. v. Ector,* supra, pp. 30-31.

The distinction governing retrospectivity, as to whether a penalty is "merely . . . ameliorated rather than lifted by subsequent legislation," is well taken in this case. The 1982 enactment, OCGA § 7-4-34.1 (Code Ann. § 57-204.1), did not merely ameliorate the penalty, but lifted it entirely, to the point of providing: "The claim or defense of usury by any borrower under this Code section or his successor or anyone on his behalf is prohibited." This is strong language indeed. It indicates a total absence of the traditional abhorrence of usury as to certain loans made upon terms agreed to by the parties. Moreover, it expresses an abhorrence of the practice of certain borrowers who extract money from a lender by agreeing to the terms of the loan but then renege and take advantage of the usury laws to avoid their own contracts and keep the lender's money.

In the face of such strong expression of public policy, it would be unjust to extract from the appellants, *while their case is still pending and the full penalty had not finally been assessed,* that severe penalty which the Dorseys had no vested, choate right to, and which no longer exists. To do so would, because of an old penal law now in disrepute, violate that "naked and changeless equity which forbids that one man should retain the money of his neighbor, for which he paid nothing, and for which his neighbor received nothing: an equity which is natural — which savages understand [and] which cultivated reason approves. . . ." *Culbreath v. Culbreath,* 7 Ga. 64, 67.

The 1982 Act lifting the penalty is applied retrospectively. We reverse the judgment of the trial court granting judgment to the Dorseys and de facto forfeiting the Wests' principal and interest, and remand the case for further proceedings not inconsistent with OCGA § 7-4-34.1 (Code Ann. § 57-204.1), including the threshold determination whether this loan is within the class of loans described in that code section.

*Judgment reversed. Shulman, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 16, 1983 —
REHEARING DENIED JUNE 30, 1983 —

*Durwood T. Pye,* for appellants.

*Michael C. Ford,* for appellees.